2024 IL App (1st) 240004-U

No. 1-24-0004B

Sixth Division

March 12, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 799601 |
| | ) | |
| | ) | |
| GEORGE JOHNSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | Honorable |
| | ) | Carl Boyd, |
| | ) | Judge, Presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court's findings that the defendant committed a detainable offense, and that he posed a real and present threat to the community were not against the manifest weight of the evidence. The circuit court abused its discretion when it failed to explain why no conditions or combination of conditions could mitigate the threat posed by the defendant.

¶ 2                                    I. BACKGROUND

¶ 3    Defendant-Appellant George Johnson (Johnson) appeals under Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023) from the circuit court's order entered on December 20, 2023,

denying him pretrial release under Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act.

¶ 4   Johnson was charged with one count of Aggravated Battery/Discharge Firearm pursuant to 720 ILCS 12/3.05 (West 2022) and six counts of attempt murder under 720 ILCS 5/8-4(a) (West 2022). On July 5, 2023, Johnson had a bond hearing. Johnson was assessed by Pretrial Services to be a 1 on the New Criminal Activity Scale, and a 1 on the Failure to Appear Scale. In addition, Johnson was not flagged for a risk of violence, and was recommended for release with no conditions. Johnson has no prior criminal history. However, the court ordered Johnson to be held with no bail.

¶ 5   On December 11, 2023, after the Pretrial Fairness Act went into effect, Johnson filed a Petition to Grant Pretrial Release. On December 20, 2023, the State filed a Petition for Pretrial Detention. The circuit court held a hearing on both petitions that same day. According to the State's proffer, on or about June 12, 2023, Johnson and the victim were neighbors living in an apartment building in Blue Island, Illinois. Johnson's apartment was directly above the victim's apartment. The victim and Johnson had known each other since about 2018, when they were both patients at an inpatient mental health facility. Johnson and the victim moved from the inpatient facility into the Blue Island apartment building around the same time.

¶ 6   In 2020, a conflict arose between Johnson and the victim. Johnson had provided keys to the apartment building to approximately seven nonresidents. Afterwards, the door to the building was left open and nonresidents had access to the interior of the building. The victim went to Johnson's apartment to speak to him about the issue, but Johnson slammed the door in his face. The victim complained to the building's landlord on June 6, 2023. Johnson and the victim did not have any additional interactions until June 12, 2023.

¶ 7    Just before 8 p.m. on June 12, 2023, the victim arrived home and parked his vehicle in front of the apartment building. The victim observed seven nonresidents—apparently the same seven nonresidents Johnson had provided keys to—standing outside of the apartment building looking at him. The victim also saw Johnson looking at him from inside his apartment. The victim went to his apartment and was putting away his work equipment when he heard Johnson slam the door to his apartment. As the victim rushed to retrieve the remaining equipment from his car, he observed Johnson run between the buildings and join the seven nonresidents that were still standing outside. The victim went back to his apartment.

¶ 8    Later, the victim went to the store and upon his return once again observed Johnson and the seven nonresidents staring at him. The victim saw that Johnson had his hand underneath his shirt. The victim called his social worker from his vehicle. The social worker and the social worker's supervisor were on a three-way call with the victim. When the victim exited his vehicle, Johnson took two steps towards him. The victim asked Johnson if he was going to shoot him or if he wanted to fight. The victim then took off the sweater he was wearing. Johnson then pulled out a black handgun and shot the victim, striking him in the chest. Johnson attempted to shoot the victim again, but his gun jammed. The victim ran away and hid between the cars in the parking lot. When Johnson was able to unjam the handgun, he found the victim and fired seven more times. The victim was shot multiple times and sustained injuries to his legs, arms, and back. The social worker and supervisor were still on the phone call at the time.

¶ 9    Another witness—who Johnson claims is the victim's romantic partner—called the victim after hearing the gunshots. The victim told the witness that Johnson shot him. The witness found the victim, and the victim pointed to Johnson who was running away and climbing over a fence. Police and paramedics arrived at the scene and spoke to the victim, who identified Johnson as the shooter. The victim was transported to Christ Hospital where he was treated for his injuries. On

June 15, 2023, the victim was shown a photo array while in the hospital, where he positively identified Johnson as the person who shot him.

¶ 10 Officers recovered surveillance video which captured the gunshots. Officers obtained and executed a search warrant on Johnson's residence and recovered ammunition underneath his bed that was consistent with the shells recovered from the scene. Johnson was taken into custody a couple of weeks later.

¶ 11 Defense counsel noted that Johnson was diagnosed with a mental health condition when he was 20 years old and that he had been receiving various services, including psychiatric treatment and other forms of therapy, at the Human Resources Development Institute (HRDI), which was also his legal payee. Defense counsel also proffered that the victim had threatened Johnson previously, flashing a weapon at him on January 16, 2023. Johnson had complained to the police, counselors, employees of Catholic Charities, and his housing coordinator that the victim threatened him. The victim has a 2007 conviction for unlawful use of a weapon and a subsequent controlled substances conviction. The victim was charged in 2023 for possession of a firearm and aggravated unlawful use of a weapon by a felon.

¶ 12 Defense counsel argued that Johnson acted in self-defense. Defense counsel stated that because of the history of conflict between Johnson and the victim, the recitation of events in the State's proffer was not clear and convincing evidence that Johnson's actions were unjustifiable. Next, defense counsel stated that Johnson did not pose a real and present threat to the safety of a person or the community because his risk assessment scores were 1 out of 6 for new criminal activity and 1 out of 6 for failure to appear. Additionally, HRDI was still Johnson's legal payee and HRDI was willing to assist him in finding new housing. Alternatively, he could live with his father who resides in Chicago if released. Defense counsel argued that electronic monitoring

4

should be an option because a no contact order was entered after the shooting and Johnson had not violated it.

¶ 13    In response to defense counsel's arguments, the State argued that Johnson could not have acted in self-defense when he shot the unarmed victim. The State pointed out that the victim took off his sweater so Johnson would have seen that the victim was unarmed.  Moreover, the State argued that self-defense does not apply here because the victim ran away after he was shot and hid behind a car, yet Johnson tracked him down and shot at him seven more times. It argued that Johnson's actions of shooting the victim multiple times because of a minor dispute over building keys demonstrated that no conditions could protect the victim, neighbors, or any other person.

¶ 14    The circuit court stated:

> "The Court heard the proffer of [defense counsel] on behalf of George Johnson. The Court has also heard the proffer of [the State] for the People. The Court opines that the proof is evident or the presumption is great that defendant has committed an eligible offense *** in that the defendant has committed an offense of aggravated battery with a firearm as well as attempted murder. Defendant does pose a real and present threat to the safety of persons in the community based on the fact the [Johnson] shot the victim once. The victim fled. [Johnson] then located the victim a second time and shot several more times in the direction of the victim and shot the victim. So there is no condition or combination of conditions– set forth in 5/110-10B that can mitigate the real and present threat posed by [Johnson]."

The circuit court's form pretrial detention order also includes the following hand-written findings. As to section 1, the court wrote, "Attempt murder – agg bat firearm[.]" As to section 2, the court wrote, "[Defendant]" shot [victim] once. [Victim] ran. [Defendant] located [victim] and shot [victim] multiple times[.]" As to finding 3, the court wrote, "Attempt Murder Agg Bat/ firearm."

¶ 15                                 II. ANALYSIS

¶ 16    All defendants are presumed eligible for pretrial release under the Pretrial Fairness Act and

the State bears the burden of justifying pretrial detention with clear and convincing evidence. 725

ILCS 5/110-6.1 (e) (West 2022). Specifically, to justify pretrial detention, the State has the burden

to prove that:

> "(1) the proof is evident or the presumption great that the defendant has committed an
>
> offense listed in subsection (a);
>
> (2) *** the defendant poses a real and present threat to the safety of any person or persons
>
> or the community, based on the specific articulable facts of the case, by conduct which may
>
> include, but is not limited to, a forcible felony, the obstruction of justice, intimidation,
>
> injury, ***;
>
> (3) no condition or combination of conditions set forth in subsection (b) of Section 110-10
>
> of this Article can mitigate (i) the real and present threat to the safety of any person or
>
> persons or the community, based on the specific articulable facts of the case[.]" *Id.*

The presumption of pretrial release applies to even violent crimes. *People v. Stock*, 2023 IL (1st)

231753, ¶ 18. The court may consider a variety of factors in considering whether a defendant has

committed a detainable offense, including, but not limited to, (1) the nature and circumstances of

the offense charged; (2) the weight of the evidence against the defendant; and (3) the nature and

circumstances of the real and present threat to the safety of any person or persons in the

community, based on specific and articulable facts of the case. 725 ILCS 5/110-5 (West 2022);

725 ILCS 5/110-6.1(g) (West 2022).

¶ 17    Our courts have taken different positions on which standard of review applies to decisions

under the Pretrial Fairness Act. Some have employed the abuse of discretion standard to all aspects

of detention hearings (see e.g. *People v. Whitmore*, 2023 IL App (1st) 231807, ¶¶ 18-19), and

others have applied the manifest weight of the evidence standard throughout (see e.g. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12). Yet others have used a hybrid approach, utilizing both the manifest weight of the evidence and abuse of discretion standards depending on the element at issue. See e.g. *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31- 36; see also *People v. Reed*, 2023 IL App (1st) 231834, ¶ 31.  Another court has applied a *de novo* standard of review. *People v. Battle*, 2023 IL App (1st) 231838, ¶ 18.

¶ 18      We find the hybrid or mixed standard well-reasoned. Under that approach, we review the first two findings, whether the proof is evident or the presumption great that the defendant committed a detainable offense and whether the defendant poses a threat to a person or the community, under the manifest weight of the evidence standard. *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-36. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Id.* We review the third finding, whether there are conditions or a combination of conditions that can mitigate the threat posed by the defendant, for abuse of discretion. *Id.* We only find an abuse of discretion if the circuit court's decision is arbitrary, fanciful or unreasonable, or where no reasonable person would agree with the position adopted." *Id.* "Courts are 'endowed with considerable discretion' where, as here, they are called upon to weigh and balance a multitude of factors and arrive at a decision that promotes not only 'principles of fundamental fairness' but 'sensible and effective judicial administration.' " *People v. Reed*, 2023 IL App (1st) 231834, ¶ 31. The failure to exercise discretion is abuse of discretion. *Seymour v. Collins*, 2015 IL 118432, ¶ 50.

¶ 19      Johnson first argues that the circuit court erred in concluding that the State presented clear and convincing evidence that he committed an eligible offense and that he posed a real and present danger to the community. Johnson asserts that he presented significant evidence of self-defense in that the encounter resulted from an ongoing conflict between him and the victim, that the victim

previously threatened him with a weapon, that the victim had a previous conviction for unlawful use of a weapon, and that the victim was charged with possession of a firearm and aggravated unlawful use of a weapon by a felon. Johnson contends that the circuit court did not acknowledge the evidence of self-defense or otherwise "identify a source of its certainty that, considering the exculpatory evidence proffered by the defense, the allegations were 'highly probably true,' per the standard."

¶ 20    The State argues in response that Johnson is charged with attempt murder and aggravated battery with a firearm, both of which are detainable offenses, and that it met its burden of showing by clear and convincing evidence the proof is evident and presumption great that Johnson committed the offenses based on the following specific articulable facts: (1) Johnson shot the victim multiple times; (2) Johnson was seen fleeing the scene and climbing over a fence after the shooting; (3) the victim positively identified Johnson; (4) surveillance video captured the gunshots; (5) a search of Johnson's apartment recovered ammunition that matched the ammunition used on the victim; and (6) Johnson had a motive to retaliate after the victim confronted him for giving out keys to the building to nonresidents and complained to the landlord. The State additionally argues that by finding the State met its burden, the circuit court necessarily rejected Johnson's theory of self-defense, even if it did not say so expressly.

¶ 21    We find that the circuit court's finding is not against the manifest weight of the evidence. The State presented clear and convincing evidence that Johnson shot at the victim once, pursued the victim after the victim fled, and then shot at him at least seven more times, causing injuries to his legs, arms, and back. Johnson does not deny shooting the victim, and instead argues that because of his history with the victim, he was acting in self-defense. He contends that the circuit court erred by failing to consider his self-defense theory. We note that nothing in the record suggests that the victim had a firearm or any sort of weapon. Because the victim took off his

8

sweater before Johnson shot him, Johnson would have seen that he was unarmed. Moreover, the record reflects that the circuit court did consider Johnson's self-defense theory. Before issuing its oral ruling, the circuit court stated that it "heard the proffer of [defense counsel] on behalf of George Johnson[,]" In addition, the circuit court is "presumed to know the law and follow it accordingly" unless there is a showing to the contrary. *People v. Guja*, 2016 IL App (1st) 140046, ¶ 64. "The right of self-defense does not justify an act of retaliation and revenge. Nor does it allow the pursuit and killing of even an original aggressor after the aggressor abandons the quarrel." *People v. Huddleston*, 176 Ill. App. 3d 18, 34 (1st Dist. 1988). Given that there is significant, unrebutted evidence that Johnson shot the unarmed victim and then pursued him after he retreated and shot at him seven more times, the circuit court's finding "that the proof is evident or the presumption is great that the defendant has committed *** an offense of aggravated battery with a firearm as well as attempted murder" was not against the manifest weight of the evidence.

¶ 22    Next, Johnson argues that the circuit court erred in concluding that the State met its burden to show that Johnson posed a real and present threat to the community because the State "provided no basis for [that] conclusion other than the complaining witness's account." Johnson argues that the circuit court credited the victim's account of the incident even though the victim was unreliable. Johnson also argues that he is a minimal threat to the community because he has no criminal background, he was not flagged for a risk of violence, and the evidence he presented of the victim's previous use of weapons and threats against him explained his conduct during this incident.

¶ 23    The State argues that given the facts in this case, Johnson does pose a real and present threat to the community because he shot the victim, then actively pursued the victim after he fled, and then continued shooting at him, all because of a relatively minor conflict between him and the victim. Given that Johnson escalated a minor conflict to shooting the victim multiple times, the

State argues that Johnson poses a risk to any person he might live near and to any other member of the community.

¶ 24    The circuit court's finding that Johnson poses a real and present threat to the community was not against the manifest weight of the evidence. The court specifically articulated its concern over Johnson pursuing the victim, stating "[Johnson] does pose a real and present threat to the safety of persons in the community based on the fact the [Johnson] shot the victim once. The victim fled. [Johnson] then located the victim a second time and shot several more times in the direction of the victim and shot the victim."  Thus, we conclude that the court considered and properly discounted the possibility of self-defense here.

¶ 25    Finally, Johnson argues that the circuit court erred in finding that no condition or combination of conditions could mitigate the threat to the community presented by Johnson, and that the State had not presented clear and convincing evidence to support this conclusion. Specifically, Johnson asserts that the State did not include anything in its proffer and the circuit court failed to explain why the alternatives to detention he proposed, including placing him on electronic monitoring and requiring him to reside away from the victim in a place other than the Blue Island apartment building or at his father's home, could not mitigate any threat or risk to the victim or community.

¶ 26    The State argues that its proffer provided sufficient basis for the circuit court to find that no condition or combination of conditions would mitigate Johnson's dangerousness. The State indicated in its proffer:

> "[t]here is no condition that this Court can impose upon [Johnson] to protect this victim from [Johnson] and also to protect any other neighbors or anybody else [Johnson] may come into contact with. This was a relatively minor dispute which elevated to somebody being shot numerous times."

The State additionally argues that the circuit court's finding, when read in context, shows that the court was particularly concerned about Johnson's pursuit of the victim after he was initially shot and fled and that based on the specific articulable facts of the case, the court found that there were no less restrictive alternatives to minimize the threat to the victim or community because even if Johnson were on electronic monitoring he would still be a danger to anyone who lives near him.

¶ 27    Although the circuit court indicated its concern that Johnson continued to shoot at the victim even after he fled, it provided no reasons to support its conclusion that, "there is no condition or combination of conditions– set forth in 5/110-10B that can mitigate the real and present threat posed by [Johnson]." Section 110-6.1(h)(1) of the Pretrial Fairness Act (725 ILCS 110-6.1(h)(1) (West 2022)) requires the court to make a written finding "summarizing its reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." Johnson has no prior criminal history. In addition, before the Pretrial Fairness Act went into effect, Pretrial Services scored him a 1 on likelihood to reoffend and 1 on likelihood of failure to appear, did not flag him for a risk of violence, and recommended that he be released without conditions.  Johnson indicated to the court that he could be placed on electronic home monitoring, away from the victim, in several different locations. The court did not address Johnson's lack of criminal history or explain why these less restrictive alternatives would not be sufficient to mitigate the risk posed by Johnson. We find that the circuit court abused its discretion by failing to explain why conditions or combinations of conditions—such as placing Johnson on electronic monitoring and requiring him to live at his father's home—would not mitigate any threat posed by Johnson. Neither the oral ruling nor the written order provides sufficient explanation for us to conclude that the circuit court both considered the conditions and found them to be insufficient to mitigate the risk posed by Johnson.

Without more, the record is inadequate to allow meaningful review of the circuit court's exercise of discretion. *People v. Martin*, 2023 IL App (4th) 230825, ¶ 24.

¶ 28    Other courts have reasoned along similar lines. In *People v. Peralta*, for example, we found the circuit court abused its discretion when it found that less restrictive conditions would not mitigate the defendant's threat to the community because the defendant "fired multiple shots on a city street [due] to an altercation at a liquor store" and failed to explain why less restrictive conditions could not mitigate the defendant's threat. *People v. Peralta*, 2023 IL App (1st) 231897-U, ¶ 13. In *People v. Martin*, the court found that the circuit court had abused its discretion when it stated that the "defendant needs to be detained" without addressing less restrictive conditions of release. *People v. Martin*, 2023 IL App (4th) 230826, ¶ 23. In *People v. Staake*, the court found the circuit court abused its discretion by:

> "finding by way of a checked box that no conditions of pretrial release could mitigate the real and present threat defendant posed to the safety of the community, [but failing] to set forth its reasons, either orally or in writing, explaining '*why* less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case.' " *People v. Staake*, 2024 IL App (4th) 231420-U, ¶ 20 (emphasis in the original).

Here, the circuit court failed to explain why no conditions or combination of conditions could mitigate against the risk of danger Johnson posed to the victim or community. The portion of the written order addressing conditions or combination of conditions merely states "Attempt murder Agg. Bat/ firearm." At the hearing, the circuit court's remarks on the conditions were limited to the following statement: "[Johnson] does pose a real and present threat to the safety of persons in the community based on the fact the [Johnson] shot the victim once. The victim fled. [Johnson] then located the victim a second time and shot several more times in the direction of the victim

and shot the victim. So there is no combination or combination of [conditions]– set forth in 5/110-10B that can mitigate the real and present threat posed by [Johnson.]" We find these statements insufficient to explain why less restrictive conditions would not mitigate the danger Johnson poses to the victim or community if he were released on conditions. See 725 ILCS 110-6.1(h)(1) (West 2022). Therefore, we find that the circuit court abused its discretion and remand for further proceedings so the circuit court can consider and explain why, if at all, no conditions or combination of conditions would mitigate the threat posed by Johnson to the victim or community. To be clear, we express no opinion on this issue.

¶ 29                                III. CONCLUSION

¶ 30      For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

¶ 31      Affirmed in part, reversed in part, and remanded.