2024 IL App (1st) 240336-U

No. 1-24-0336B

Order filed May 3, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | No. 22 CR 9211 |
| | ) | |
| JOSEPH COMMON, | ) | Honorable |
| | ) | Natosha C. Toller, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Justices Mikva and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held:* We affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 2    In July 2022, defendant Joseph Common was charged with attempted first-degree murder, armed robbery, aggravated kidnapping, aggravated discharge of a firearm, and unlawful use or possession of a weapon by a felon. Thereafter, on September 18, 2023, Public Acts 101-652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act) became effective. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 52. In January 2024, Common filed a petition to remove a financial condition of pretrial release, after which the State filed a petition to detain. Following a hearing, the circuit court granted the State's petition to detain. Common now appeals

that order, and contends that the circuit court erred in ordering his pretrial detention. For the reasons that follow, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4        On July 13, 2022, Common was charged with attempted first-degree murder, armed robbery, aggravated kidnapping, aggravated discharge of a firearm, and unlawful use or possession of a weapon by a felon. Following a bond hearing, a court set his bond at $750,000, with the condition that he be placed on electronic monitoring. Common was unable to pay his bond and has been in custody since his arrest.

¶ 5        On January 16, 2024, Common filed a petition to remove a financial condition of pretrial release, in which he requested the court remove the financial condition of his pretrial release and to hold a hearing under sections 110-5(e) and 110-7.5(b) of the Code of Criminal Procedure of 1963, as amended by the Act, (Code) (725 ILCS 5/110-5(e), 110-7.5(b) (West 2022)).

¶ 6        On February 8, 2024, the case was before the court for a hearing on Common's petition for release, and on that same day, the State filed a petition for pretrial detention hearing under section 110-6.1 of the Code (*id.* § 110-6.1). At the detention hearing, defense counsel argued that the State's petition was untimely under section 110-7.5 of the Code. The court found that the State's petition was timely.

¶ 7        The parties then proceeded to argument on the petition for detention. The State argued that the proof was evident and the presumption great that Common committed an eligible offense, and proffered as follows. On July 10, 2022, Common entered a beauty supply store where customers were present, and when an employee was assisting two customers at the check-out, Common brandished a pink and silver revolver-type firearm and aimed it at the employee. Common demanded the employee, who put his hands up, to open the cash register. The employee

complied, after which Common, while waving the firearm, directed the two customers and the employee to the back of the store. While the individuals were at the back of the store, Common aimed his firearm at the employee. The employee then pulled out his own firearm and discharged it in Common's direction, after which Common fled. The employee and another customer followed Common. At one point, the customer went back towards the store, and Common "fire[d] a round" at the employee. The employee fired his gun back at Common, who continued to run through an alley. The employee then "discharge[d] another round and another round was fired from [Common]", after which Common continued to run. Responding officers subsequently found Common, who had a gunshot wound, and recovered a pink firearm in a garbage bin from the area.

¶ 8        The State also proffered that Common gave an electronically recorded interview after the incident, in which he stated he had a pink and silver firearm, that he had discharged the firearm, that he placed it into a garbage can, and that he had placed money from the cash register into his pocket. The State further proffered that the incident was captured on video surveillance and that Common had identified himself in a surveillance video still holding a firearm. The State proffered that Common identified himself in a still of a second surveillance video, and indicated where he drew his firearm. The State asserted that Common had claimed self-defense at the time but that "in the still which he identified himself he was the one with the gun drawn and the victim did not have a firearm in his possession."

¶ 9        In addition, the State proffered as aggravating evidence that Common had a prior conviction in 2020 for battery as well as convictions in 2015 for manufacture and delivery of heroin, and theft. The State also asserted that in 2002, Common was convicted of armed robbery, possession of a stolen motor vehicle, and aggravated fleeing and eluding. The State further observed that he had three prior bond forfeitures.

¶ 10       The State further argued that Common posed a real and present threat to the safety of any person or persons or the community, asserting that he pulled out a gun in an operating business when the victim was working with other customers, placing all three parties in fear of being shot, and then he committed a robbery. The State asserted that Common then moved the individuals to the back of the store while waving a firearm at them, causing fear of bodily harm. The State also contended that Common posed a threat to the community at large because after he fled from the scene, he ran into the streets of the community and discharged a firearm towards the victim. According to the State, Common was also a flight risk because while he was trying to flee, he was willing to shoot his gun. The State argued that there was no condition or combination of conditions set forth, including electronic monitoring, that could mitigate the risk of the threat that Common posed to the community or to prevent flight, noting that he had prior bond forfeitures.

¶ 11       In response, defense counsel challenged the credibility of the employee-witness, asserting that after the incident, he gave the police a different firearm than what he had used and did not tell the police about the switch until days later when the police confronted him about it. Defense counsel also asserted that another witness saw "the individual" running with a gun pointed behind him and did not see him fire at the individuals who were pursuing him. As for whether Common posed a threat to safety, counsel requested the court consider his physical condition, noting that he was "advanced in age" and due to the incident, he had a gunshot wound to the head that caused a brain aneurysm, as well as a work injury that caused partially immobility to his left arm. Counsel argued that Common had a host site for electronic monitoring and noted that the original bond court who ordered the condition of the monetary bond had found that electronic monitoring was appropriate.

¶ 12　　Following the parties' arguments, the court made findings that the proof was evident, or the presumption great, that Common committed an eligible offense and posed a real and present threat to the safety of any person or persons or the community. In doing so, the court stated that there were multiple victims in the store, and that Common brandished the firearm at the victim while the victim was speaking with the other victims. The court stated that Common forced the victim to open the cash register and then forced the other two individuals into the back of the store while brandishing the firearm. The court noted that he brandished the firearm while committing the armed robbery and that he made threats to others while armed with a firearm. The court stated that it found that restrictive conditions were necessary due to the threats in the case.

¶ 13　　The court observed that Common also had prior convictions for armed robbery, possession of a stolen motor vehicle, and aggravated fleeing and eluding. The court then stated that Common posed a real and present threat, noting that there were multiple victims, that he ran and discharged a firearm in the presence of other individuals and the community, and that the action of discarding the firearm was dangerous and reckless. The court also noted that Common fled to avoid arrest and prosecution. The court found that Common's flight endangered others and stated that, "when he was trying to flee from this armed robbery and after he got the money, he endangered others in firing that firearm, and so, number three is there a condition or conditions set forth that can mitigate the real and present threat to the safety of any person or persons or the community? I don't find that here." The court further found that there was nothing about his age "that didn't allow him to go arm himself with a firearm and allegedly commit this armed robbery making threats, discharging the gun in the streets and doing what he did, so I don't find any less restrictive conditions." The court concluded that it found that the State showed by clear and convincing evidence that Common should be detained and it orally ordered his pretrial detention.

¶ 14      On the same day, the court issued a written order, in which it determined that the State had shown by clear and convincing evidence that the proof is evident, or the presumption great, that Common had committed attempted murder, aggravated kidnapping, "gun possession," and aggravated discharge of a firearm. The court also found that he posed a real and present threat to the safety of any person or persons, or the community, based on the specific articulable facts of the case, including that, while armed with a firearm, Common robbed a store with multiple victims inside and forced the victims to go to the back of the store. The court added that Common also discharged his firearm twice at the employee and that he had a prior armed robbery conviction in 2002. The court found that no condition or combination of conditions could mitigate the threat because "with a history of violence, he committed the offense of armed robbery [and] agg[ravated] kidnapping while armed with a firearm & he discharged that firearm." Additionally, the court found that no condition or combination of conditions could mitigate Common's willful flight because after he robbed a store with multiple people inside, he fled on foot and that, while fleeing to avoid arrest, he shot twice at the victim and discarded his gun in a reckless and dangerous manner. The court ordered Common detained pretrial.

¶ 15      This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17      Common contends that the court erred when it found that the State's petition was timely. He argues that under sections 110-6.1(c) and 110-7.5(b) of the Code (725 ILCS 5/110-6.1(c), 110-7.5(b)(West 2022)), the State's petition was untimely, asserting that he filed his petition to remove a financial condition of pretrial release on January 16, 2024, and that the State did not file the petition to detain until 22 days later at the hearing on his petition for release.

¶ 18	Common was arrested in July 2022, which was before the September 18, 2023, effective date of the Act, and was ordered detained pretrial with the condition of monetary bond. Common was unable to pay his bond, so he has been in custody since his arrest. Under these circumstances, Common had the option to either remain in pretrial detention until he paid the previously set monetary security or file a motion to modify the previously set conditions under sections 110-5(e) and 110-7.5(b) of the Code. See *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶ 26 (explaining that a defendant who was arrested before the effective date of the Act and who was in custody after having been ordered released with conditions may either "remain in detention until the previously set monetary security *** be paid or *** file a motion to modify the previously set conditions of pretrial release under sections 110-7.5(b) and 110-5(e) of the Code"). On January 16, 2024, Common filed a petition to remove a financial condition of pretrial release, so he chose the second option. By doing so, he opened the door to proceedings under the amended statute, which included the State being allowed to file a petition to detain in response. See *People v. McDonald*, 2024 IL App (1st) 232414, ¶ 28 (stating that the defendant "initiated the proceedings" by filing his petition for pretrial release and "opened the door to proceedings dictated by the amended statute, including the State's ability to file a pretrial detention petition in response").

¶ 19	The hearing on Common's petition to remove a financial condition of pretrial release was continued by agreement to February 8, 2024, and the State filed its petition to detain on that same day. As previously discussed, once Common filed his petition to remove a financial condition of pretrial release, he initiated proceedings under the Code, and the State could then file a petition to detain in response. See *id*; *People v. Davidson,* 2023 IL App (2d) 230344, *¶* 18; *Forthenberry*, 2024 IL App (5th) 231002, ¶ 27; *People v. Freeman*, 2024 IL App (1st) 232476-U, ¶ 23; see also

Ill S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (providing that unpublished Rule 23 orders filed on, or after, January 1, 2021, "may be cited for persuasive purposes").

¶ 20    Common contends that the State's petition was untimely under sections 110-6.1(c) and 110-7.5(b) of the Code (725 ILCS 5/110-6.1(c), 110-7.5(b) (West 2022)). He asserts that the State filed its petition 22 days after he had filed his motion to remove a financial condition of release.

¶ 21    In *People v. Haisley*, 2024 IL App (1st) 232163, ¶ 18, this court explained that when the legislature eliminated cash bail, it "directed that any defendants who were in detention because they had not posted a monetary bond would be entitled to a hearing at which the court could consider the appropriate conditions of release anew." (citing 725 ILCS 5/110-5(e), 110-7.5 (West 2022)). The court further noted that there is inconsistency in the Illinois courts regarding "whether a defendant's request to reopen the conditions of pretrial release triggers a new opportunity for the State to file a detention petition that would otherwise be untimely" under section 110-6.1(c) of the Code. *Id.* ¶ 19 (citing 725 ILCS 5/110-6.1(c)(1) (West 2022)). We agree with the courts that have determined that when a defendant requests to reopen the conditions of pretrial release under section 110-7.5 of the Code, as Common did here, the State is not time-barred under section 110-6.1(c) of the Code from filing a detention petition in response. See *id.* ¶¶ 18-20; *Freeman*, 2024 IL App (1st) 232476-U, ¶ 21.

¶ 22    Section 110-6.1(c)(1) of the Code provides that,

> "A petition may be filed without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days, except as provided in Section 110-6, after arrest and release of the defendant upon reasonable notice to defendant; provided that while such petition is pending before the court, the defendant if previously released shall not be detained." 725 ILCS 5/110-6.1(c)(1) (West 2022).

In *Haisley*, this court concluded that under the plain terms of section 110-6.1(c)(1) of the Code, the State is authorized to file its detention petition "without notice at the initial appearance" and "[i]f the State does not file a detention petition at the initial appearance, then it can still file one, subject to reasonable notice, up to 21 days after the defendant is released from custody." *Haisley*, 2024 IL App (1st) 232163, ¶ 21.

¶ 23    Here, Common has not been released from custody. As such, the time for the State to file a detention petition upon reasonable notice had not yet started to run. See *id.* ¶ 22 (concluding that the defendant "had not been released from custody, which means the time for the State to file a petition upon reasonable notice had not yet run"); *Freeman*, 2024 IL App (1st) 232476-U, ¶ 25.

¶ 24    Accordingly, where the State's petition to detain was filed in response to Common's petition to remove a financial condition of pretrial release and where the State's petition was timely under section 110-6.1(c) of the Code, the court did not err in finding that the State's petition was timely.

¶ 25                        Circuit Court's Findings

¶ 26    We next address Common's arguments regarding the circuit court's findings at the detention hearing. Under the Code, as amended, "[a]ll defendants shall be presumed eligible for pretrial release." 725 ILCS 5/110-6.1(e) (West 2022). The State has the burden to prove by clear and convincing evidence that the court should deny a defendant pretrial release. *Id*. The State must prove three elements: (1) the proof is evident, or the presumption great, that the defendant committed an eligible offense; (2) "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case"; and (3) that no condition or combination of conditions could mitigate (i) "the real and present threat to

the safety of any person or persons or the community, based on the specific articulable facts of the case" or (ii) the defendant's willful flight. *Id.* §§ 110-6.1(e)(1)-(3).

¶ 27    We review the circuit court's factual findings on whether the State proved these three elements under the manifest-weight of the evidence standard. *People v. Pitts*, 2024 IL App (1st) 232336, ¶ 29. "A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent or if the finding is unreasonable, arbitrary, or not based on the evidence presented." *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. We review a circuit court's ultimate detention ruling under the abuse of discretion standard. *Id.* "An abuse of discretion occurs when the court's ruling is fanciful, arbitrary, or unreasonable or where no reasonable person would agree with the court's position." *People v. Wells*, 2024 IL App (1st) 232453, ¶ 16. "[I]n assessing the sufficiency of a trial court's findings, its written findings must be read in conjunction with its oral pronouncements." *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19.

¶ 28    Common challenges the circuit court's findings only with respect to the third element, whether the State proved that no condition or combination of conditions could mitigate the real and present threat posed or the defendant's willful flight. We find that the court's oral and written findings read in conjunction are not against the manifest weight of the evidence.

¶ 29    In considering conditions of pretrial release, the court may consider the nature and circumstances of the offense charged as well as the history and characteristics of the defendant, including the defendant's criminal history. 725 ILCS 5/110-5(a)(1)-(3) (West 2022); see *People v. Snowden*, 2024 IL App (1st) 232272-U, ¶ 34.

¶ 30    In the court's written order on its finding that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community, the court noted Common's history of violence, which as proffered by the State included armed

robbery, possession of a stolen motor vehicle, and aggravated fleeing and eluding. The court's written order also noted the circumstances of the offense proffered by the State, including that he committed armed robbery and aggravated kidnapping while armed with a firearm and that he discharged that firearm. At the hearing, the court likewise expressed its concerns regarding the circumstances of the offenses. The court found that, "when [Common] was trying to flee from this armed robbery after committing the armed robbery and after he got the money, he endangered others in firing that firearm, and so, *** " there is no condition or conditions set forth that could mitigate the real and present threat to the safety of any person or persons or the community. The court further stated that he armed himself with a firearm and committed the charged offense of armed robbery "making threats, discharging the gun in the streets and doing what he did, so I don't find any less restrictive conditions." The court's oral finding that the State proved that no condition or combination of conditions could mitigate the real and present threat Common posed to any person or persons or the community, when read in conjunction with its written order, was not arbitrary, unreasonable or not based on the evidence. The court's finding therefore was not against the manifest weight of the evidence.

¶ 31     We note that Common also contends that the State failed to show any actual facts of his willful flight from prosecution. However, "[i]t is enough to detain a defendant if the court finds that no conditions of release could mitigate *either* the safety risk or the defendant's willful flight." *People v. Reed*, 2023 IL App (1st) 231834, ¶ 30 (Emphasis in original) (citing 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022)). Here, the court found that Common posed a threat, a finding that is supported by the record and that he does not challenge on appeal. See *id.* (concluding that the circuit court need not make a finding of flight risk where it made a finding that the defendant "presented a threat and that finding is supported by the record"). We therefore need not review the

11

court's finding that the State proved that no condition or combination of conditions could mitigate his willful flight from prosecution.

¶ 32        Common also asserts that the court erred in its determination that no condition or combination of conditions would reasonably ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 33        Common's challenge addresses what the State must prove at a hearing for revocation of pretrial release, which is not relevant here. Section 110-6 of the Code, which addresses revocation of pretrial release, modification of conditions of pretrial release, and sanctions for violations of conditions of pretrial release, provides that a court may revoke a defendant's pretrial release after a hearing, at which the State must prove "by clear and convincing evidence, that no condition or combination of conditions of release would reasonably ensure the appearance of the defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." 725 ILCS 5/110-6(a).

¶ 34        Here, as previously discussed, at the detention hearing, under section 110-6.1(e) of the Code, the State was required to prove the three elements described above in order for the circuit court to order a defendant detained pretrial. *Id.* §§ 110-6.1(e)(1)-(3). Thus, we will not address Common's argument.

¶ 35        Lastly, we note that Common asserts that he was denied a fair hearing because the State relied on his electronically recorded interview that was not tendered to defense counsel. Under section 110-6.1(f)(1) of the Code, as relevant here, before the detention hearing, the State "shall tender to the defendant *** any written or recorded statements, and the substance of any oral statements made by any person, if relied upon by the State in its petition." *Id.* § 110-6.1(f)(1).

¶ 36 Here, Common does not provide additional argument on this issue or direct us to the record to support his assertion that the State did not tender his electronically recorded interview to defense counsel before the hearing. Rather, the record shows that, at the detention hearing, the State informed the court that it had tendered discovery, including the electronically recorded interview, to the Office of the Public Defender four times before the hearing, explaining that it had tendered discovery at each time a new defense counsel had been assigned. The record therefore does not support that Common was denied a fair hearing based on the State failing to tender to defense counsel his electronically recorded interview.

¶ 37 Accordingly, because the circuit court did not commit manifest error when it found the State met its burden to prove that no condition or combination of conditions could mitigate the threat he posed to any person or persons or community, the court's decision ordering pretrial detention was not arbitrary, fanciful, or unreasonable. The court therefore did not abuse its discretion when it granted the State's petition and ordered Common detained pretrial.

¶ 38                                    III. CONCLUSION

¶ 39 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 40 Affirmed.