2023 IL App (1st) 231834

FIFTH DIVISION
December 29, 2023

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

No. 1-23-1834B

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 MC3 2896 |
| | ) | |
| DARRELL REED, | ) | Honorable |
| | ) | Ellen Beth Mandeltort, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Lyle and Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant Darrell Reed appeals from the circuit court's order detaining him before trial, under both the dangerousness and the willful flight standards set out in section 110-6.1 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652, § 10-255, and Public Act 102-1104, § 70 (eff. Jan. 1, 2023) (725 ILCS 5/110-6.1 (West 2022)), commonly known as the Pretrial Fairness Act. For the reasons that follow, we affirm the court's order of detention.

¶ 2                                    I. BACKGROUND

¶ 3 On September 22, 2023, Mr. Reed was charged with the unlawful possession of a firearm, after having his firearm owner's identification (FOID) card revoked. 430 ILCS 65.0/2-A-1 (West

2022). This is a nonprobationable offense (730 ILCS 5/5-5-3(c)(2)(N) (West 2022)) for which Mr. Reed was eligible for pretrial detention, and the State filed a petition to detain him pending trial under section 110-6.1(a)(1) of the Code (725 ILCS 5/110-6.1(a)(1) (West 2022)).

¶ 4     The circuit court held a hearing on the petition on September 27, 2023. Mr. Reed was present and represented by private counsel.

¶ 5     The State's proffer was that on September 22, 2023, officers from the Schaumburg Police Department were summoned to the Wyngate hotel in response to a report that a resident would not leave his room after checking out. When officers arrived at the hotel, they knocked on the door, and saw Mr. Reed inside wearing what the police described as brass knuckles, and then saw him loading his bags onto a cart.

¶ 6     Officers saw three magazines visible in one of the open bags. Mr. Reed became agitated and said that the police were going to kill him. He made comments about an officer's race and said that the officers should arrest him. Mr. Reed then stepped into the hallway and stripped naked. At that point, the police detained him. When the police picked up Mr. Reed's sweatshirt, they found a loaded Derringer pistol in the pocket. In his bags they found multiple magazines and two loaded semiautomatic firearms, one with a laser sight attachment.

¶ 7     Through a search of the Secretary of State database, the police determined that Mr. Reed had a revoked FOID card and a warrant from DuPage County. The State also told the court that Mr. Reed had two orders of protection issued against him in Tennessee and was simultaneously carrying two driver's licenses, one from Illinois and another from Tennessee.

¶ 8     Mr. Reed's criminal background consisted of two misdemeanor convictions, a DUI in 2017, and a battery in 2012.

¶ 9     Mr. Reed's counsel explained that the item the police believed were "brass knuckles" was

actually a four fingered gold ring. Mr. Reed's counsel argued that Mr. Reed was not a threat to anyone, that he had family—including his mother, who was present at the hearing—in Illinois with whom he could stay, that he was gainfully employed with a lengthy professional resume, and that the warrant out of DuPage County was on a civil matter for unpaid attorney fees and had been resolved. Mr. Reed's counsel explained that Mr. Reed was traveling to Illinois from Tennessee on business and argued that he was not in violation of the law, since he had a valid Tennessee concealed carry permit.

¶ 10    The court passed the case twice to allow the State to verify some of what Mr. Reed's counsel had said and for the parties to determine the status of the two purported orders of protection in Tennessee. The State advised the court that it was determined that only one of the orders of protection was still in effect, and it would expire in April 2024. According to the State, part of that order required Mr. Reed to turn in any firearms in his possession. Counsel for Mr. Reed then explained that his client had been in Illinois for most of the past nine months and had never received a copy of the order of protection.

¶ 11    The court found that the State had shown by clear and convincing evidence that the proof was evident and the presumption great that Mr. Reed had committed a detainable offense, that he posed a threat to the community, and that there was a high likelihood of flight. The court also found that no condition or combination of conditions could mitigate the real and present threat Mr. Reed posed to the community. The court ordered that Mr. Reed be detained until trial.

¶ 12    The parties appeared again the next day on Mr. Reed's motion to reconsider the detention order. Defense counsel advised the court that he had confirmed Mr. Reed never received notice of the order of protection in Tennessee or that it required him to turn in all firearms and that Mr. Reed had, in fact, been served by publication in that case. Counsel also advised the court that he had

3

been told by the Tennessee Department of Safety & Homeland Security that Mr. Reed's concealed carry license had not been revoked on September 22, 2023, and that a notice to Mr. Reed that his Tennessee concealed carry license had been suspended had just been mailed out the day before. Counsel also explained to the court that Mr. Reed took off his clothes at the hotel because he wanted to demonstrate to the police officers that he was not carrying a gun.

¶ 13    The State responded by sharing with the court its own further investigation. Counsel told the court that he had received a letter from the Illinois State Police advising him that Mr. Reed's FOID card was revoked in 2018 for an order of protection. The State had also obtained the Tennessee order of protection and the petition in support of that order. The State advised the court that the petition stated Mr. Reed had sent the person seeking the order of protection 21 messages within a couple of hours in which he threatened to kill the petitioner's friend.

¶ 14    In response to defense counsel's objection to the State reading the contents of this document into the record, the court said it would allow a "limited amount of leeway." The petition also alleged that Mr. Reed told the petitioner that his family wanted to kill her family, that Mr. Reed had physically assaulted the petitioner while she was pregnant, and that he had forced her to have sex with him on multiple occasions and threatened to kill her more than once.

¶ 15    Over defense counsel's objection, the State was allowed to read from a second temporary order of protection, in which it was alleged that Mr. Reed had fired a Derringer pistol, which was the same type of pistol recovered from him on September 22, a few inches away from the petitioner inside their apartment in Tennessee.

¶ 16    The court denied the motion to reconsider. It found that, regardless of what license Mr. Reed might have in Tennessee, it was a violation of Illinois law for him to have the guns with him in this state. The court reiterated that "the defendant has exhibited by his actions and by the amount

of arsenal of weapons that he had in his room that he is a danger to others."

¶ 17 The court admonished Mr. Reed of his appeal rights at both hearings and Mr. Reed filed a notice of appeal on October 10, 2023.

## II. JURISDICTION

¶ 18 The circuit court entered its order granting the State's petition for pretrial detention on September 27, 2023. Mr. Reed filed a timely notice of appeal from that order on October 10, 2023. We have jurisdiction over this appeal under section 110-6.1(j) of the Code (725 ILCS 5/110-6.1(j) (West 2022)) and Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023), governing appeals from orders denying the pretrial release of a criminal defendant.

¶ 19 III. ANALYSIS

¶ 20 Section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)) provides that "[a]ll defendants shall be presumed eligible for pretrial release." The State must seek pretrial detention by filing a timely, verified petition. *Id.* § 110-6.1(a), (c). To prevail on a petition, the State must prove by clear and convincing evidence that (1) "the proof is evident or the presumption great" that the defendant committed a qualifying offense, (2) the defendant "poses a real and present threat to the safety of any person or persons or the community" (the dangerousness standard) and (3) "no condition or combination of conditions" set forth in section 110-6.1(b) of the Code can mitigate either that safety risk or "the defendant's willful flight." *Id.* § 110-6.1(e)(1)-(3).

¶ 21 The statute makes clear that "[t]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.* § 110-6.1(f)(5). Rather, either side "may present evidence *** by way of proffer based upon reliable evidence." *Id.* § 110-6.1(f)(2). The court's ultimate decisions "regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or

standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7).

¶ 22    Mr. Reed argues in his notice of appeal that the State failed to meet its burden of showing that (1) he committed the qualifying offense; (2) he posed a threat; and (3) no conditions of release could mitigate that threat or the risk that he would not appear. Mr. Reed filed a memorandum in support of his arguments, as he was permitted but not required to do under Rule 604(h)(2) (eff. Oct. 19, 2023). In that memorandum, he focuses on what he claims is the State's failure to show that he posed a real and present danger and the circuit court's error in determining that no condition or combination of conditions could ensure his appearance. The State exercised its right to file a responding memorandum. *Id.*

¶ 23    Section 110-6.1 of the Code does not establish a standard of review for orders granting, denying, or setting conditions of pretrial release. The State argues that we should review everything the court did for an abuse of discretion. However, we typically review factual findings to see if they are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18. This is the standard we now apply to the court's findings that, based on the State's proffer, Mr. Reed committed the charged offense and that he poses a danger to the community.

¶ 24    We do not find either of these findings to be against the manifest weight of the evidence. While Mr. Reed may have a defense to the charged offense based on his Tennessee concealed carry permit, that is far from clear and there was no question that his Illinois FOID card has been revoked. There was enough evidence presented to meet the State's burden.

¶ 25    In finding that Mr. Reed presented a danger to the community, the circuit court cited a number of facts that were apparent from the State's proffer, including "the nature of the charge, the number of weapons, the defendant's background, the existence of an order protection [*sic*], the fact that he has two driver's licenses, the fact that his Illinois firearm owner identification card

[was] revoked, *** [and] the existence of an order of protection." The court also noted that it would be surprised if Tennessee would have allowed Mr. Reed to retain his concealed carry license after an order of protection had been entered. We cannot say the court's finding that Mr. Reed presented a real and present threat to the safety of the community was against the manifest weight of the evidence.

¶ 26     We note that at the hearing on Mr. Reed's motion to reconsider, the circuit court allowed the State, over Mr. Reed's counsel's objection, to read from a petition filed in Tennessee in support of an order of protection. This written statement from some unnamed and unknown alleged victim does not appear to us to be a "proffer based upon reliable information" (725 ILCS § 5/110-6.1(f)(2) (West 2022)) as contemplated by section 110-6.1 of the Code. However, no information contained in this "proffer" by the State was cited by the court in its decision to detain Mr. Reed. Indeed, the court had already ruled on the State's petition for detention at the time this document was read into the record. Because the proffered evidence that was cited by the court sufficiently supports its findings, we conclude that the information contained in the petition for a protective order had no impact on this appeal.

¶ 27     We cast no aspersion on the parties or the circuit court in this case. The court commendably wanted to give Mr. Reed a full opportunity to present his arguments; Mr. Reed's counsel worked vigorously to present a more complete picture of Mr. Reed's right to carry weapons; and the State was responding quickly to information that Mr. Reed injected into the proceedings. We only note this as a reminder that while section 110-6.1 of the Code specifically allows for proffered evidence in lieu of live testimony, it does require that such proffers be based on "reliable" information.

¶ 28     We also note that it appears some of these documents from Tennessee may have been shown to the circuit court. We urge the circuit court and counsel for both sides to ensure that any

documents that the circuit court reviews in a detention hearing are made a part of the record on appeal so that they can also be reviewed by this court. Again, however, since the contents of the Tennessee petitions for and orders of protection ultimately played no part in the circuit court's decision, the fact that they are not in the record has no impact on our ability to review this case.

¶ 29    Mr. Reed also appears to contest the circuit court's finding that he was a flight risk. This is not a required finding where, as in this case, a finding was made that Mr. Reed presented a threat and that finding is supported by the record. It is enough to detain a defendant if the court finds that no conditions of release could mitigate *either* the safety risk or the defendant's willful flight. *Id.* § 110-6.1(e)(1)-(3). Thus, we have no cause to review this finding.

¶ 30    On the circuit court's determination that there were no conditions of release that could mitigate the safety risk, we agree with the State that an abuse of discretion standard is most appropriate. Courts are "endowed with considerable discretion" where, as here, they are called upon to weigh and balance a multitude of factors and arrive at a decision that promotes not only "principles of fundamental fairness" but "sensible and effective judicial administration." *Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504, 508 (2003) (noting that this is the standard of review when a court rules on a *forum non conveniens* motion). Abuse of discretion is also the standard we have historically used to review bail appeals under Rule 604(c)(1). *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10. "An abuse of discretion occurs when the circuit court's decision is 'arbitrary, fanciful or unreasonable,' or where 'no reasonable person would agree with the position adopted by the [circuit] court.'" *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 31    The court's finding that there were no conditions that could mitigate the risk were based on the same concerns it cited in its finding that Mr. Reed presented a threat to the community. The

court cited "the number of weapons, the way in which he conducted himself with the police, the things he said to the police, that they were going to kill him, [and] the fact that he had a revoked Illinois FOID." We do not find the circuit court abused its discretion in determining that no condition or combination of conditions could sufficiently mitigate the real and present threat that Mr. Reed poses to the community.

¶ 32                               VI. CONCLUSION

¶ 33    For the above reasons, we affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 34    Affirmed.

---

## *People v. Reed*, 2023 IL App (1st) 231834

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-MC-289601, the Hon. Ellen Beth Mandeltort, Judge presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Paul Burnson, of Chicago Trusted Attorneys, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Mariela Guzman, Assistant State's Attorneys, of counsel), for the People. |

---