2024 IL App (1st) 240152B-U

No. 1-24-0152B

THIRD DIVISION
May 15, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24DV7055901 |
| | ) | |
| RODNEY HILL, | ) | Honorable |
| | ) | David Kelly, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Justice Lampkin concurred in the judgment.
Presiding Justice Reyes specially concurred.

**ORDER**

¶ 1     *Held*: We affirm the trial court's order denying defendant pretrial release where the State sufficiently established that defendant committed the charged offense, that he posed a real and present threat to the victim and to the community, and that no conditions of release could mitigate the threat he posed.

¶ 2     Defendant Rodney Hill appeals the trial court's order denying him pretrial release pursuant

to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West

2022)).[1] On appeal, defendant contends that the court erred in denying release where the State failed to establish by clear and convincing evidence that (1) no conditions such as electronic monitoring could mitigate any threat defendant presents to the public or to any person, and (2) no conditions or combination of conditions could reasonably ensure defendant's appearance at hearings. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged with one count of unlawful use of a weapon by a felon (UUWF) and one count of aggravated assault with a firearm. A public safety assessment prepared by pretrial services found that defendant scored a 3 out of 6 on the "new criminal activity" scale, and a 2 out of 6 on the "failure to appear" scale. The report recommended release with pretrial monitoring. The State filed a petition, based on the UUWF charge, to detain defendant pending trial pursuant to section 110-6.1 of the Code.

¶ 5     At the hearing on the petition, the State proffered the following as the basis of its petition. The police received a call regarding a person with a firearm. When they arrived at the location, they observed an individual matching the description given. As officers approached the person, later identified as defendant, they observed a black extended magazine protruding from defendant's armpit. They recovered the magazine, as well as a loaded black semi-automatic firearm, from defendant. Officers then placed defendant into custody.

¶ 6     Officers spoke with the victim, who was defendant's 34-year-old wife. She indicated that defendant had taken her debit card without permission. She confronted him about the card outside

_____

[1] Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, is commonly known as the Pretrial Fairness Act or the SAFE-T Act. Neither name, however, is the official title of the legislation. See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4.

of their residence, but he walked away. She then approached defendant at a nearby gas station and again confronted him about her debit card. Defendant displayed his firearm, which caused his wife to fear that he would commit a battery against her.

¶ 7    The State next presented evidence of defendant's three prior felony convictions. In 2018, defendant pleaded guilty to theft and received two years of probation. In 2014, he was convicted of UUWF and was sentenced to three years in the Illinois Department of Corrections. In 2005, defendant was convicted of manufacture/delivery of a controlled substance for which he received 24 months of probation.

¶ 8    The State also presented evidence of defendant's five prior arrests for domestic-related incidents. In 2022, defendant was arrested for aggravated assault against his wife where he pointed a firearm at her. Also in 2022, defendant was arrested for domestic battery for striking his wife in the face. Defendant was arrested in 2020 for the assault of a different victim. In 2008 and 2010, defendant was arrested for domestic battery against two other victims. The victims in the domestic battery cases were in relationships with defendant at the time of the offenses.

¶ 9    In response, defense counsel argued that there was no corroborating evidence that defendant pointed a firearm at his wife, and defendant's convictions were for non-violent offenses. Although defendant was arrested for domestic-related incidents, he was never convicted of those offenses. Counsel argued that the pretrial services report recommending release with monitoring should be given more weight when determining whether defendant presented a danger to any person or to the community. Counsel also pointed to defendant's court appearances in the past two years and argued that defendant would comply with the court's orders. Furthermore, defendant was the father of two children, had significant ties to the community, and was gainfully employed.

Counsel requested that defendant be released with conditions that could reduce any threat he may pose, such as electronic monitoring, pretrial services with curfew, or home confinement.

¶ 10    The trial court found that the State's proffer showed by clear and convincing evidence that defendant possessed a firearm on the day in question. In determining defendant's present threat, the court noted that the current offense involved defendant's wife, and her claim that defendant brandished a weapon was "substantiated by the gun and the magazine that was recovered from [defendant's] person."

¶ 11    The court also considered the fact that defendant had five prior domestic battery arrests, the most recent in 2022 involving the present victim. In that case, defendant allegedly struck his wife. In the 2022 aggravated assault incident, it was alleged that defendant pointed a firearm at his wife. Although the 2010 and 2008 domestic battery incidents involved different victims, each was in a relationship with defendant at the time. The court also noted that in 2014, defendant was convicted of UUWF for which he served three years in prison. The trial court reasoned:

"So, if I'm looking at the big picture here, here you brandished this victim with a gun, you threatened her with a gun. There have been occasions in the past where you've been accused of the same thing. Although those cases were dismissed, I think that I can confidently find that you do, in fact, pose a real and present threat to the safety of both this victim, your wife, as well as the community at large based on the facts of this case."

¶ 12    The trial court then considered whether conditions existed that would mitigate the risk presented by defendant. The court reasoned that electronic monitoring was "not fail proof." The device "can be tampered with," enabling its removal from a person. The court also noted that "a lot of movement [ ] is allowed with electronic monitoring devices." Regarding home confinement, the court considered that "people oftentimes leave those host sites and they escape." The court

noted that "it actually takes longer for the court to be provided notice of the fact that they've escaped. And so those aren't fail-proof options for this court today."

¶ 13    The trial court found that, "based on the fact that there is violence in your background, based on the fact that [in] this current case you're alleged to have pointed a gun at your wife over a debit card," electronic monitoring or home confinement would not be appropriate. The court granted the State's petition and ordered that defendant "be detained on this matter and remanded to custody." Defendant now appeals.

¶ 14                                    III. ANALYSIS

¶ 15    Section 110-6.1(e) of the Code provides that "[a]ll defendants shall be presumed eligible for pretrial release." 725 ILCS 5/110-6.1(e) (West 2022). In order to detain a defendant, the State must show, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person or the community based on the specific facts of the case, and (3) no conditions or combination of conditions exist that can mitigate this threat or defendant's willful flight. *Id.*

¶ 16    Regarding our standard of review, a split has emerged among the appellate courts on the proper standard for reviewing whether the State has met its burden under section 110-6.1(e). See *People v. Pitts*, 2024 IL App (1st) 232336 (detailing the debate among the districts regarding the appropriate standard of review). As *Pitts* recognized, some courts have found that an abuse of discretion applies to the court's factual findings, while others have determined that a manifest weight of the evidence standard applies. *Id.* ¶ 14. Courts in two divisions of the First District have found that the first two elements of section 110-6.1(e) should be reviewed using the manifest

weight standard, but the third element should be reviewed for an abuse of discretion. See *People v. Reed*, 2023 IL App (1st) 231834, and *People v. Saucedo*, 2024 IL App (1st) 232020.

¶ 17    We agree with the reasoning in *Reed* and *Saucedo* as set forth in those cases. Since defendant only challenges the trial court's judgment as to the third element in this appeal, we apply an abuse of discretion standard in reviewing his contentions here. A trial court abuses its discretion if the court's decision is arbitrary, fanciful, or unreasonable, or if no reasonable person would agree with the court. *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 18    The State's proffer showed that defendant pointed a firearm at his wife when she confronted him about taking her debit card. Officers found defendant with a loaded black semi-automatic weapon and an extended magazine. Although defendant had prior felony convictions, he possessed a firearm. In fact, defendant was convicted of UUWF in 2014 for which he served three years in prison. The trial court determined that, based on the proof presented, it was evident that defendant committed the UUWF offense as charged.

¶ 19    It also found that defendant posed a real and present threat to his wife, as well as to the community at large. Factors to consider when determining defendant's dangerousness include the nature of the offense charged and whether it involved a weapon, any evidence of defendant's prior criminal history indicating violent, abusive, or assaultive behavior, the nature of the threat posed to an individual, and whether defendant was known to possess weapons. See 725 ILCS 5/110-6.1(g)(1), (2)(A), (3), and (7) (West 2022).

¶ 20    The State's proffer showed that defendant had five prior domestic violence arrests. Two of those incidents occurred in 2022 against his wife. In one case, defendant allegedly struck his wife in the face. In the other, defendant allegedly pointed a firearm at his wife. Although the 2010 and 2008 domestic battery incidents involved different victims, each was in a relationship with

defendant at the time. In its written order, the court found that defendant has a "propensity for violence including the current charges."

¶ 21 On appeal, defendant does not challenge the trial court's findings as to these elements.

¶ 22 Defendant contends, however, that the trial court erred in denying him pretrial release where the State failed to establish that no condition or combination of conditions could mitigate the risk he posed. He argues that the State failed to address electronic monitoring and that he has no history of tampering with devices. Citing *People v. Stock*, 2023 IL App (1st) 231753, defendant argues that the State's mere reliance on the proffered evidence, with a conclusory statement that no conditions could mitigate the threat he posed, was insufficient to satisfy its burden.

¶ 23 *Stock* is distinguishable. In *Stock*, the defendant was charged with aggravated battery regarding an incident involving his wife. The State's proffer showed that his wife had informed the defendant that she wanted a divorce, and upon returning to their home a few days later with several friends, defendant threw a broom at her. As his wife and her friends moved her belongings out of the house, defendant retrieved a handgun from a bedroom and allegedly discharged the weapon into the bedroom wall. His wife was in the bathroom on the other side of the wall. She suffered a grazing wound to her stomach and an injury to her hand. His wife and her friends visited a bar before she transported herself to a hospital. Police later recovered a 9-millimeter handgun from the defendant's bedroom. *Id.* ¶ 5.

¶ 24 Defense counsel proffered that the defendant was employed full-time and volunteered with his daughter at a food pantry. Also, the floorplan of the home showed that the master bedroom did not share a wall with the bathroom in which the wife was injured. There was evidence that a bomb and arson squad was initially called to investigate an explosion in the bathroom. Defendant stated that he believed his wife and her friends had already left the residence when he discharged the

handgun. Counsel further proffered that the defendant had no criminal background prior to this case, and he suffered from anxiety and depression. The defendant requested that he be released to home confinement, with GPS monitoring if necessary. *Id*. ¶ 6.

¶ 25     The trial court found that State had met its burden to establish the three elements and ordered the defendant detained pending trial. On the order form, in the space provided to describe why the State had proved that no condition or combination of conditions of release could mitigate the danger posed by the defendant, the court wrote, "The defendant shot a firearm at the complaining witness." *Id.* ¶¶ 7-8.

¶ 26     This court found that the State presented no evidence on the third element where it relied solely on the facts of the present offense, and then concluded that no conditions or combination of conditions could mitigate the danger posed by the defendant. *Id.* ¶ 19. Section 110-6.1(e) presumes that persons accused of violent offenses are eligible for release. *Id.* ¶ 18. We reasoned that allowing the trial court to detain the defendant simply because he is accused of discharging a firearm in the present case was "at odds with the statute's presumption of eligibility for all defendants." *Id.* Therefore, more evidence was required for detention under section 110-6.1(e). *Id.*

¶ 27     We further found that the trial court's written order did not comply with the statute where it provided no explanation for why it believed no conditions existed that could mitigate the defendant's threat, other than that he "shot a firearm at the complaining witness." *Id.* ¶ 20.

¶ 28     In another case cited by defendant, *People v White*, 2024 IL App (1st) 232245, ¶ 14, the trial court stated only that no conditions for release existed because, "[d]ue to the lack of concern and judgment for the safety of others[,] this Court cannot risk the release of [White] at this time."

¶ 29     Unlike *Stock* and *White*, the State in this case did not rely solely on the factual allegations of the current offense. The State's proffer showed that defendant had a history of arrests for violent

offenses. His most recent arrests were for offenses against his wife, the victim in the current case. One of those arrests also involved a firearm. The other domestic violence arrests involved defendant's partner at the time. Furthermore, defendant possessed a firearm even though he was a convicted felon. The State presented evidence that defendant had been convicted of UUWF in 2014.

¶ 30     Based on all of this evidence, the court found that defendant has a "propensity for violence *including* the current charges." (Emphasis added.) The court also found no applicable condition "fail proof." It reasoned that electronic monitoring could "be tampered with," enabling its removal from a person. Also, "a lot of movement [ ] is allowed with electronic monitoring devices." Regarding home confinement, the court considered that "people oftentimes leave those host sites and they escape." Additionally, it "takes longer for the court to be provided notice of the fact that they've escaped." Therefore, the trial court informed defendant that electronic monitoring or home confinement would not be appropriate, "based on the fact that there is violence in your background, based on the fact that [in] this current case you're alleged to have pointed a gun at your wife over a debit card."

¶ 31     We find no error here. Although no evidence was presented that defendant had tampered with monitoring devices in the past, the court's determination was not fanciful, arbitrary, or unreasonable. Defendant, who is a convicted felon, nonetheless possessed a firearm. He has repeatedly flouted the law when it comes to possessing a dangerous weapon. Additionally, he is charged with pointing a semi-automatic weapon at his wife. He has a history of arrests for violent offenses against his wife and other domestic partners. Our legislature has recognized "domestic violence as a serious crime against the individual and society which *** promotes a pattern of escalating violence which frequently culminates in intra-family homicide." 750 ILCS 60/102(1)

(West 2022). This case represents defendant's third arrest in two years for offenses against his wife. The trial court's finding that neither electronic monitoring nor home confinement were appropriate conditions for release because they were not "fail proof," was based on the evidence.

¶ 32 Since the trial court properly found that no conditions of release would be appropriate in this case, we need not consider whether any conditions exist that could mitigate defendant's flight risk. See 725 ILCS 5/110-6.1(e) (West 2022) (providing that defendant may be detained if the court finds no conditions of release could mitigate the safety risk *or* defendant's willful flight), and *People v. Reed*, 2023 IL App (1st) 231834, ¶ 30 (finding no cause to review the court's finding that the defendant was a flight risk when the court properly found that no conditions of release could mitigate the safety risk).

¶ 33                                   IV. CONCLUSION

¶ 34 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 35 Affirmed.

¶ 36 REYES, P.J., specially concurring:

¶ 37 I concur in the judgment affirming the trial court's grant of the State's petition for pretrial detention.