2024 IL App (1st) 240648-U

FIFTH DIVISION
June 5, 2024

No. 1-24-0648B

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 CR 72001 |
| | ) | |
| ALEX LOPEZ, | ) | Honorable |
| | ) | Marc Martin, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Justices Lyle and Navarro concurred in the judgment.

**O R D E R**

¶ 1    *Held*:  The circuit court's order continuing defendant's pretrial detention is affirmed. It was not an abuse of discretion to conclude that no conditions would mitigate the real and present threat to the safety of individuals or the community that would result from defendant's pretrial release.

¶ 2    Defendant Alex Lopez appeals from the circuit court's order continuing his pretrial detention under the dangerousness standard set out in section 110-6.1 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652, § 10-255, and Public Act 102-1104, § 70 (eff. Jan. 1, 2023) (725 ILCS 5/110-6.1 (West 2022)), commonly known as the Pretrial

Fairness Act.

¶ 3 For the reasons that follow, we affirm the court's order of detention.

¶ 4                        I. BACKGROUND

¶ 5 On December 18, 2023, the State charged Mr. Lopez with attempted armed robbery (720 ILCS 5/8-4 (West 2022); 720 ILCS 5/18-2(a)(2) (West 2022)) based on events alleged to have occurred on December 15, 2023.

¶ 6 On December 21, the day after Mr. Lopez's arrest, the State filed a petition for pretrial detention. The petition stated that (1) the proof was evident and the presumption great that Mr. Lopez attempted armed robbery, a forcible felony eligible for detention under section 110-6.1(a)(1.5) of the Code; (2) Mr. Lopez satisfied the dangerousness standard of section 110-6.1(e)(2) because he posed "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case;" and (3) no condition or combination of conditions set forth in section 110-10(b) of the Code could mitigate those risks.

¶ 7 Pretrial Services rated Mr. Lopez a four out of six on the New Criminal Activity Scale and a three out of six on the Failure to Appear Scale.

¶ 8 The hearing on the State's petition was held the same day. There is no transcript of that proceeding. Judge Cerone Marisie ruled in a written order that the State had met its burden. It found that Mr. Lopez's "drug and mental health issue [was] out of control" and he presented a danger to "himself and others." The court also noted that Mr. Lopez had been out of jail on prior release for a charge of aggravated unlawful use of a weapon at the time the alleged offense occurred.

¶ 9 On March 14, 2024, Mr. Lopez's attorney petitioned the court to grant pretrial release, asking it to "reconsider his detention" under sections 110-6.1 and 110-10 of the Code. 725 ILCS

5/110-6.1 (West 2022); 725 ILCS 5/110-10 (West 2022). The petition made three points. The first was that Mr. Lopez was not properly medicated on December 15, 2023. The situation was such that the police took Mr. Lopez to a behavioral hospital where he remained for five days prior to his arrest. According to the petition, Mr. Lopez is still not receiving proper treatment in the Cook County Department of Corrections and has only seen a psychiatrist once. Next, as an alternative to incarceration, the court should have released Mr. Lopez to Haymarket, a drug and mental health treatment facility. Finally, the court could mitigate any risk Mr. Lopez posed through electronic monitoring or monitoring by pretrial services.

¶ 10    A hearing was held on that petition on March 21, 2024. The transcript of that hearing is in the record. At that hearing, the State proffered the following facts in support of its position that Mr. Lopez should remain in detention.

¶ 11    On the night of December 15, 2023, Mr. Lopez had a discussion with a co-offender about needing money. Mr. Lopez and the co-offender then drove to a gas station in Schaumburg. Mr. Lopez tied a shirt around his face and retrieved a rifle from the back seat of the co-offender's vehicle. The co-offender then parked the car on the street outside the gas station and Mr. Lopez approached the gas station's cashier who was outside smoking a cigarette. Mr. Lopez demanded that the cashier give him money.

¶ 12    A physical struggle ensued over the firearm. The rifle fell and the cashier put Mr. Lopez in a chokehold to prevent him from retrieving the gun. The two then fell to the ground. The shirt tied around Mr. Lopez's face fell off and the cashier recognized Mr. Lopez as one of the gas station's frequent patrons who he knew as "Alex."

¶ 13    The co-offender then pulled the car up. The cashier, believing the co-offender to be a customer, asked the co-offender to call 911. The co-offender refused and instructed Mr. Lopez to

enter the car.

¶ 14    Mr. Lopez tried to grab the rifle again, but the cashier stepped on it. Mr. Lopez abandoned the rifle and entered the vehicle before the two left at high speed. The cashier was able to take a picture of the front of the vehicle with the license plate visible. The cashier later identified Mr. Lopez in a photo array and officers recovered a gun, an unloaded magazine, and a T-shirt from the gas station.

¶ 15    At some point after, police spotted the car driving at a high speed with Mr. Lopez and the co-offender inside. Both were placed into custody. The car's registration matched the registration of the car shown in the photograph that the cashier took. The police transferred Mr. Lopez to a mental health facility. He was arrested upon discharge.

¶ 16    The State pointed out that, at the time these events occurred, Mr. Lopez "was out on bond for a Class 4 aggravated unlawful use of a weapon [charge]" for which he had been arrested in August of 2023. The other case was still pending at the time of the March hearing.

¶ 17    Defense counsel repeated several of the arguments it made in its petition. It then asked the court "to consider [release] so that [Mr. Lopez] can receive the mental health treatment he needs."

¶ 18    The circuit court, this time Judge Marc Martin, found that the proof was evident and the presumption great that Mr. Lopez committed attempted armed robbery. It then weighed factors relevant to section 110-6.1 of the Code (the dangerousness standard) including the nature of the offense, evidence of prior criminal or abusive behavior, the identity of a person whose safety may be threatened by the defendant's release, the defendant's age or physical condition, and whether the defendant was—at the time of the offense—out of jail due to another release from custody. 725 ILCS 5/110-6.1(g) (West 2022).

¶ 19    The court noted that the crime involved a weapon and there was no evidence of prior

criminal or abusive behavior. There was, however, evidence of "psychological problems." The court expanded on this point, stating, "There's instability as a result, and when you combine that with access to a weapon it leads to a very dangerous and volatile situation." The court noted that the safety of the cashier may be at risk if Mr. Lopez were released. Mr. Lopez's age and physical condition were not germane, but Mr. Lopez had demonstrated a history of access to weapons. Most importantly, Mr. Lopez "was [out] on release for a pending felony weapon case" when these events occurred. The court added,

> "the defendant has shown he is unable to comply with Court orders. The conditions of release were simple. Do not commit any offenses. Here we have him committing a violent armed robbery armed with a weapon as a principle. He has no FOID card, can't possess a weapon without an FOID card, so that's another inability to comply with a Court order."

¶ 20     The court finally considered alternatives to detention, stating "we all know Haymarket is a 28-day program. And I'm not ordering detention based on that fact alone, but I'm just indicating that what happens after 28 days is not clear." The court noted that it could also order electronic monitoring but found that Mr. Lopez's history of being on release at the time of this alleged crime, possessing a weapon, not having a FOID card, and failing to comply with the law indicated that detention was necessary.

¶ 21     The court denied Mr. Lopez's petition for release and again granted the State's petition to detain. Mr. Lopez appealed.

¶ 22                                    II. JURISDICTION

¶ 23     The circuit court entered its order denying Mr. Lopez's petition and again granting the State's petitions for pretrial detention on March 21, 2024. Mr. Daniel filed a timely notice of appeal from that order on March 26, 2024. We have jurisdiction over this appeal under section 110-6.1(j)

of the Code (725 ILCS 5/110-6.1(j) (West 2022)) and Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023), governing appeals from orders denying the pretrial release of a criminal defendant.

¶ 24                                    III. ANALYSIS

¶ 25    Section 110-6.1(e) of the Code provides that "[a]ll defendants shall be presumed eligible for pretrial release" and that the State bears the burden of justifying pretrial detention by clear and convincing evidence. 725 ILCS 5/110-6.1(e) (West 2022). The State must prove that (1) "the proof is evident or the presumption great" that the defendant committed a qualifying offense; (2) the defendant "poses a real and present threat to the safety of any person or persons or the community" (the dangerousness standard); and (3) "no condition or combination of conditions" set forth in section 110-6.1(b) of the Code can mitigate either that safety risk or "the defendant's willful flight." *Id*. §§ 110-6.1(e)(1)-(3), 110-10(b).

¶ 26    Either side "may present evidence *** by way of proffer based upon reliable evidence." *Id.* § 110-6.1(f)(2). The court's ultimate decisions "regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7).

¶ 27    On appeal, Mr. Lopez contends that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case.

¶ 28    We apply an abuse of discretion standard to determine whether the trial court erred in finding that no conditions of release could mitigate the safety risk. *People v. Reed*, 2023 IL App (1st) 231834, ¶ 31. "An abuse of discretion occurs when the circuit court's decision is 'arbitrary, fanciful or unreasonable,' or where 'no reasonable person would agree with the position adopted

by the [circuit] court.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 29    Mr. Lopez's argument on appeal is the same one that he made to the circuit court. He points out that he was unmedicated at the time of these events. He reports that he requested the circuit court to release him so that he could receive mental health treatment at Haymarket. He also points out that he would not be able to obtain that treatment if he is detained. He lastly argues that other conditions, such as electronic monitoring and follow up with pretrial services, could also help to mitigate any risk.

¶ 30    We cannot find that the circuit court abused its discretion in this case. Like the circuit court, we are sympathetic to Mr. Lopez's mental health needs. But, as the circuit court pointed out, Mr. Lopez has a history of access to weapons, does not have a FOID card, and was on pretrial release at the time he is alleged to have committed this offense. In addition, as the court and counsel recognized, the program at Haymarket is only 28 days and it is unclear where Mr. Lopez would go following that program. It is also unclear that there is even a bed available for Mr. Lopez at the treatment center. Under these circumstances, we cannot conclude that no reasonable person would agree with the circuit court that releasing Mr. Lopez would pose a risk to the community that could not be mitigated by other conditions.

¶ 31                                VI. CONCLUSION

¶ 32    For the above reasons, we affirm the circuit court's order granting the State's petition for pretrial detention and denying Mr. Lopez's petition for pretrial release.

¶ 33    Affirmed.