2024 IL App (1st) 240682-U

No. 1-24-0682B

Order filed June 14, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 241100889 |
| | ) | |
| KENN WHITFIELD, | ) | Honorable |
| | ) | Maryam Ahmad, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Justices Mikva and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 2    Defendant Kenn Whitfield appeals from an order of the circuit court denying him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022) (Code)), as amended by Public Act 101-652 § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today Act (Act). Mr. Whitfield contends that the trial court erred in granting the State's petition because the State failed to meet

its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that he committed the offense charged and that the threat posed by Mr. Whitfield could not be adequately mitigated if he were released and placed on electronic monitoring. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4    On March 13, 2024, Mr. Whitfield was arrested and charged with first degree murder of his girlfriend, Dariel Smith. On March 15, 2024, the State filed a verified petition for pretrial detention, arguing that Mr. Whitfield committed the detainable offense of first degree murder; that he posed a real and present threat to the community; and that no conditions or combination of conditions could mitigate that threat.

¶ 5    The State proffered that Mr. Whitfield and Ms. Smith were in a dating relationship for three years prior to the shooting. Mr. Whitfield was also engaged to another woman at this time. On the morning of June 26, 2023, Ms. Smith sent a text to Mr. Whitfield, stating she no longer wanted to be in a dating relationship with him and she was leaving town. Later that day, she and Mr. Whitfield met in person and Mr. Whitfield drove her to the beach on South Shore Drive in Chicago. According to the State, while at the beach, Mr. Whitfield shot Ms. Smith in the back.

¶ 6    Mr. Whitfield then placed Ms. Smith in his car and drove towards Jackson Park Hospital. Before reaching the hospital, Mr. Whitfield stopped at his fiancé's home and placed his firearm in a black box in the bedroom. He proceeded to the hospital, and upon arrival, Ms. Smith was pronounced dead. She suffered a single, close-range gunshot wound to the right side of her back. Later that day, Mr. Whitfield was then taken into custody.

¶ 7    In his initial interview, Mr. Whitfield told detectives that he and Ms. Smith were on the beach when she complained that he did not love her anymore. He stated that the situation became

"heated", and he walked ahead of her. He then heard what he thought was a firecracker behind him. He turned around and saw that Ms. Smith had been shot. According to the State, Mr. Whitfield made a different statement an hour and a half later. In that statement, he stated that Ms. Smith was suicidal. After kissing in the car, Ms. Smith grabbed Mr. Whitfield's gun and exited the car. He stated that she was playing with the gun when it fired one time.

¶ 8 Detectives recovered the firearm that Mr. Whitfield had admitted to placing in a black box after the shooting. After testing, one fragment from the fired bullet that was recovered from Ms. Smith's body was determined to have been fired from that gun. Mr. Whitfield's pants were also tested and were positive for the presence of gunshot residue. A search warrant for Mr. Whitfield's phone was executed and revealed text messages sent to Ms. Smith a few days prior to the shooting. In those messages, Mr. Whitfield asked her "if she wanted to get shot" and to "shut up and stay in her place because she wouldn't like what [Mr. Whitfield] will do if she didn't." Mr. Whitfield was arrested a second time on March 13, 2024, and made additional statements to detectives. He first stated that he didn't remember what happened then reiterated that Ms. Smith shot herself. He then admitted that he had the gun in his hand when it went off. The State also informed the circuit court that Mr. Whitfield had a valid Firearm Owner's Identification and a concealed carry license and no publishable background.

¶ 9 Defense counsel argued that the proof was not evident nor the presumption great that Mr. Whitfield is guilty of first degree murder. According to Mr. Whitfield, the shooting was an accident, and he did not intend to kill Ms. Smith. He also offered that he suffered a concussion "relatively recently" from the accident. Counsel also noted that Mr. Whitfield had no publishable background and no history of domestic violence. Counsel then offered mitigation, stating that Mr.

Whitfield worked full-time as unarmed security. He had two children, for whom he financially provided for. He graduated from Calumet High School and attended Robert Morris College.

¶ 10 The circuit court found the State had met its burden in proving by clear and convincing evidence that Mr. Whitfield committed the offense of first degree murder. The court based its decision on Mr. Whitfield's multiple statements, his decision to conceal his firearm, the fact that, based on forensic analysis, Ms. Smith was shot in the back at close range, and the threatening text messages sent to Ms. Smith. The court circuit court also found the Mr. Whitfield poses a real and present threat to the safety of a person or persons in the community. The court noted that though Mr. Whitfield had no prior history of domestic arrests, he is accused of discharging a firearm at an "intimate partner." Regarding the third prong, the court found that no condition or combination of conditions would mitigate the threat Mr. Whitfield poses. The court reasoned that if he was placed on electronic monitoring, he would be in a home with other intimate family members after discharging a firearm at another intimate partner. The court therefore ordered him to be detained.

¶ 11                                        II. ANALYSIS

¶ 12 Mr. Whitfield filed a timely notice of appeal from the circuit court's order. We find that we have jurisdiction to consider the merits of this appeal. See 725 ILCS 5/110-6.1(j) (West 2022); Ill. S. Ct. R. 604(h)(1)(iii) (eff. Sept. 18, 2023). In Mr. Whitfield's notice of appeal, he contends that the State failed to meet its burden of proving by clear and convincing evidence on two of the three elements under subsection (e) of section 110-6.1.

¶ 13 We first note, the Act established a presumption that all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). The State has the burden of rebutting that presumption by proving at a hearing that a defendant should be denied pretrial release. *Id.* The Act provides a list of offenses for which the State may seek detention. *Id* § 110-6.1(a)(1)-(7). To meet

its burden, the State must prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed an offense that qualifies for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case; and (3) no condition or combination of conditions of pretrial release can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case. *Id.* at § 110-6.1(e)(1)-(3) (West 2022). Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." *In re Tiffany W.,* 2012 IL App (1st) 102492-B, ¶ 12.

¶ 14    Mr. Whitfield's initial contention is that the State failed to prove by clear and convincing evidence that he committed the detainable offense of first degree murder. Specifically, he argues that the State failed to prove that he intended to kill or do great bodily harm to Ms. Smith. He contends that the evidence presented was not sufficient to show that he possessed the requisite *mens rea* to commit first degree murder.

¶ 15    We will not reverse a finding of clear and convincing evidence unless the circuit court's finding was against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d 181, 208 (2001). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 16    First degree murder is one of the offenses listed by the Act that are eligible for detention. See 725 ILCS 5/110-6.1(a)(1.5). Under the statute as charged by the State in this case, a person is guilty of first degree murder when he causes the death of another and either intended to kill or

commit great bodily harm to the decedent or knows that such actions would cause death to the decedent or another person. 720 ILCS 5/9-1-A-1.

¶ 17    The State proffered that the day before the shooting occurred, Mr. Whitfield sent Ms. Smith a threatening text message. Then, as Mr. Whitfield admits, he shoots Ms. Smith at close range while they are at the beach. The circuit court acknowledged Mr. Whitfield's assertion that he accidentally fired his gun, however, the court did not find his story credible. The court noted that Mr. Whitfield made multiple statements to police before admitting to having the gun in his hands when it fired. The court also noted that his admission to stopping at his fiancé's home to store that firearm before driving Ms. Smith to the hospital. The court believed those actions were inconsistent with an accident. The court also considered the fact that Mr. Whitfield was a licensed firearm owner, suggesting his familiarity with firearms and firearm safety.

¶ 18    At this stage, the State's burden is not proof beyond a reasonable doubt, but whether there is clear and convincing evidence that the proof was evident or the presumption great. 725 ILCS 110-6.1(e)(1). As such, we do not believe the circuit court's finding to be unreasonable, arbitrary, or not based on the evidence presented, or that the opposite conclusion was clearly evident.

¶ 19    Mr. Whitfield then challenges the circuit court's ruling that no condition or combination of conditions would mitigate the threat he poses to the community. He relies on his lack of criminal history or pattern of domestic violence to argue that he can comply with the court's orders. He also argues that since his release in June 2023 for this incident, he has not been cited with another other offense, including domestic violence. He contends he is a suitable candidate for release with the condition of electronic monitoring.

¶ 20    We apply the abuse of discretion standard when assessing the circuit court's finding as to the issue of conditions. *People v. Reed*, 2023 IL App (1st) 231834, ¶ 24. An abuse of discretion

occurs when the court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position adopted by the court. *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 21    Section 110-5 of the Code outlines factors for the circuit court to consider in determining the conditions of release. These factors include the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the defendant's criminal history. 725 ILCS 5/110-5(a)(1)-(3) (West 2022). The court may also consider the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release. *Id.* at § 110-5(a)(4) (West 2022).

¶ 22    During the hearing, the State argued that electronic monitoring, the most stringent condition of release, would not be suitable for Mr. Whitfield. The State contended that the crime he is accused of committing was against an intimate partner and if released, he would be sent to a home he shares with other intimate family members. The court also considered the fact that electronic monitoring could not prevent Mr. Whitfield from possessing a firearm. Based on the record, the court made its determination based on the specific articulable facts of the case. We therefore find no abuse of discretion. Accordingly, we affirm the judgment of the circuit court.

¶ 23                                III. CONCLUSION

¶ 24    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 25    Affirmed.