2024 IL App (1st) 240923-U

FOURTH DIVISION
Order filed: July 3, 2024

No. 1-24-0923B

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 2023111477801_ |
| | ) | |
| | ) | |
| Joaquin Degante, | ) | Honorable |
| | ) | Barbara Dawkins, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford concurred in the judgment.
Justice Ocasio specially concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion in denying the defendant pretrial release where the circuit court's finding that the defendant poses a real and present threat to the safety of the victim and the community is not against the manifest weight of the evidence and its determination that no condition or combination of conditions can mitigate the real and present threat posed by the defendant was not an abuse of discretion.

¶ 2    The defendant, Joaquin Degante, appeals from the circuit court's order of December 8, 2023, denying him pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). Commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) . For the reasons which follow, we affirm.

¶ 3    The defendant was arrested on December 6, 2023, and charged with Criminal Sexual Assault (720 ILCS 5.0/1.20-A-2 (West 2022)). On December 8, 2023, the State filed a verified Petition seeking the defendant's pretrial detention. A pretrial detention hearing was held on December 8, 2023.  At that hearing, the State made the following proffer.

¶ 4    On August 20, 2023, the defendant was at the home of the victim, C.A., and her brother to attend a block party. C.A., the 18-year-old niece of the defendant, left the block party and went into the basement of her home and fell asleep on a couch. The defendant and C.A.'s brother remained at the party drinking. Subsequently, the defendant and C.A.'s brother went into the basement of the residence and also fell asleep.

¶ 5    While C.A. was sleeping, the defendant laid behind her, pulled down her shorts and underwear to her knees, and then penetrated her vagina with his penis. C.A. awoke when she felt movements and vaginal penetration. After she awoke, the defendant tried to kiss her and asked if she liked it. C.A. repeatedly said no, but the defendant continued to penetrate her vagina. Eventually, the defendant got off of C.A. and began apologizing. C.A. pulled up her pants and ran toward her brother who was still sleeping. The defendant ran out of the house.

---

[1] The Act has been referred to as the "SAFE-T Act" or the "Pretrial Fairness Act."  Neither name is official, and neither appears in the Illinois Compiled Statures or the public act.

¶ 6     When her brother woke up, C.A. told him, "our uncle just raped me." Her brother told C.A. to call 911 and left the residence to pursue the defendant. When C.A.'s brother caught up with the defendant they fought in the street, but the defendant ultimately fled on foot.

¶ 7     The police arrived on the scene and took C.A. to a hospital where a sexual assault kit was administered.

¶ 8     The police made multiple unsuccessful attempts to locate the defendant over the course of several months. On December 3, 2023, the police learned that the defendant's father had died and his wake and funeral were to be held on December 5th and 6th, respectively. The police arrested the defendant at the funeral home on December 6, 2023.

¶ 9     The State informed the court that the defendant had two felony convictions 2013 and 2015 for driving on a suspended license, a 2009 conviction for unlawful use of a weapon by a felon, and a 2005 conviction for possession of cannabis.

¶ 10     In response, the defendant's attorney made the following proffer. The defendant is 32 years-of-age and lived with his now deceased father at the same address for 3 years. He has been a resident of Cook County for all of his life. The defendant attended high school and received a GED certificate. He has also taken classes in auto repair. Prior to his arrest, the defendant was employed full time for the past 8 years by the same company. He attends Victory Outreach and helps in his church's food pantry.

¶ 11     The defendant's attorney asserted that there are no corroborating witnesses to the alleged offense or the alleged fight between the defendant and C.A.'s brother. She also argued that, from the time of the alleged offense in August 2023 until his arrest in December 2023, the defendant resided at the same address and was working for the same company, but the State failed to show what efforts the police took to locate him. After which, it appears that the State tendered some

documents relating to the efforts of the police to locate the defendant. Defense counsel stated that the tendered documents reflect that the police visited the defendant's mother's home looking for the defendant, conducted surveillance of his sister's home, and visited a restaurant where the defendant reportedly frequented.

¶ 12    The defendant's attorney asserted that, from the date of the alleged offense until his arrest, the defendant had not come in contact with either C.A. or her brother; nor had he had any contact with law enforcement during that period.

¶ 13    Defense counsel argued that the State failed to meet its burdens of showing that: the proof is evident or the presumption great that the defendant has committed the charge offense; he poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts in this case; or no conditions or combination of conditions of pretrial release can mitigate the real and present threat posed by the defendant. She asserted that there are "many conditions" that the court could craft to mitigate concerns "regarding any sort of safety." Defense counsel stated that, based on her conversations with the defendant, she was "not for sure [that electronic monitoring is] available to him." She told the court that "[w]hat we would be asking for would be GPS" and requested that the court deny the State's petition and order the defendant's pretrial release.

¶ 14    After the defense proffer, the State advised the court of the efforts that the police had taken to locate the defendant.

¶ 15    Following the detention hearing, the circuit court denied the defendant pretrial release. In its oral ruling, the circuit court enumerated the State's burdens and stated that the State had met its three burdens by clear and convincing evidence. On the question of whether the defendant poses a real and present danger, the trial court found that he poses a threat to the safety of C.A. and the

community, stating "this is one of those times." In finding that no condition or combination of conditions could mitigate the real and present threat that the defendant poses, the court considered whether electric monitoring or GPS could mitigate the threat. As to GPS, the court concluded that it could potentially protect C.A. but would not protect the community. In rejecting electronic monitoring as a condition of pretrial release, the court stated that, because the defendant would be given "unfettered access to the world for two days by statute," electronic monitoring would not adequately protect the community.

¶ 16     The trial court entered a written order finding that the State has shown by clear and convincing evidence that: the proof is evident or the presumption great that the defendant has committed an eligible offense as listed in 725 ILCS 5/110-6.1(a)(1)-(7) (West 2024); the defendant poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts in this case; and that no conditions or combination of conditions of pretrial release can mitigate the real and present threat posed by the defendant to the safety of any person or persons or the community. In support of those findings, the trial court noted the facts surrounding the charged offense, the fact that the defendant had been convicted of prior felonies, including a remote gun offense, and that he had "evaded authorities." The trial court ordered the defendant detained and remanded him to the custody of the Cook County Sheriff pending trial.

¶ 17     On December 21, 2023, the defendant filed a notice of appeal from the December 8, 2023, detention order. However, for some inexplicable reason the clerk of the circuit court never transmitted the notice of appeal to the clerk of this court until April 25, 2024.

¶ 18     In his notice of appeal, the defendant made no argument addressed to the trial court's finding that the State had shown by clear and convincing evidence that the proof is evident or the

presumption great that he had committed a detainable offence. As a consequence, our analysis is addressed to only the defendant's arguments that the State failed to meet its burden of proving by clear and convincing evidence both that he poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts in this case and that no condition or combination of conditions of pretrial release can mitigate the real and present threat posed by him to the safety of any person or persons or the community. In addition to recounting the facts asserted in his proffer, the defendant argued that: from the time of the alleged offense in August 2023 until his arrest in December 2023, he had no contact with C.A.; the instant case is the first time that he has been charged with a sex offense; and he does not have any conviction for a crime of violence in his background. The defendant also noted low scores on his pretrial assessment; 3/6 on the new criminal activity scale and 2/6 on the failure to appear scale. The defendant argued that, in rejecting electronic monitoring and GPS as an alternative to pretrial detention, the trial court failed to individualize its findings. He asserted that he had never been placed on electronic monitoring before and there is no evidence that two days of unfettered access to the community is unsuitable, especially in light of the fact that, from the time of the alleged offense until his arrest, he had no contact with "the legal system or law enforcement." The defendant concluded that lesser conditions of pretrial release could be imposed, and his detention was an abuse of discretion.

¶ 19    In considering this appeal, this court has reviewed the following documents which have been submitted pursuant to Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023):

- Defendant's Notice of Pretrial Fairness Act Appeal,
- Defendant's supporting record,
- The report of proceedings on December 8, 2023,

- Defendant's notification that he will not file a supporting memorandum, and

- The State's written response to the defendant's appeal.

¶ 20    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)). Under that statute, a defendant's pretrial release may only be denied in certain limited situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). Upon the filing of a petition requesting an order denying the defendant's pretrial release, the State has the burden to prove by clear and convincing evidence that: the proof is evident or the presumption great that the defendant has committed a qualifying offense; the defendant's pretrial release poses a real and present threat to the safety of any person or the community and/or that the defendant's pretrial detention is necessary to prevent the defendant's willful flight to avoid prosecution; and no condition or combination of conditions of pretrial release can mitigate the real and present threat posed by the defendant to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(e)(1). (2). (3) (West 2022). A trial court may order a defendant detained pending trial if it finds that the State has met all three of its burdens.

¶ 21    We are mindful of the fact that several judges in the Appellate Court believe that review of a pretrial detention order should be *de novo.* See: *People v. Lee,* 2024 IL App (1ˢᵗ) 232137 ¶ 21; *People v. Saucedo,* 2024 IL App (1ˢᵗ) 232020, ¶ 65 (Ellis, J., specially concurring). We disagree. As was noted by the majority in *Saucedo*, the decision to grant or deny pretrial release involves proof, or the absence thereof, of three propositions. The first two, whether the proof is evident and the presumption is great that the defendant committed the offenses charged and that the defendant poses a real and present threat to the safety of any person or persons or the community, are questions of fact. *Saucedo,* 2024 IL App (1ˢᵗ) 232020, ¶¶ 31, 32. The manifest weight standard

applies to the review of factual determinations made by the trial judge. *People v. Finlaw,* 2023 IL App (4th) 220797, ¶ 55. We believe the third proposition, that no condition or combination of conditions can mitigate the real and present threat posed by the defendant, is a matter committed to the discretion of the trial judge based on a weighing of several factors to arrive at a decision that promotes principals of fundamental fairness and effective judicial administration. *Saucedo,* 2024 IL App (1st) 232020, ¶ 36; *People v. Reed,* 2023 IL App (1st) 231834, ¶31.

¶ 22    The abuse of discretion standard of review was applied to circuit court decisions relating to the setting of bond. *People v. Simmons,* 2019 IL App (1st) 191253, ¶ 9; *People v. Johnson,* 2019 IL App (3d) 190582, ¶ 8. We find no reason why the same standard of review should not apply to the circuit court's ultimate decision to either grant or deny pretrial release.

¶ 23    In support of its written findings that the State met its burdens of proving by clear and convincing evidence both that the defendant poses a real and present threat to the safety of any person or persons or the community and that no condition or combination of conditions of pretrial release can mitigate the real and present threat posed by the defendant, the trial court noted the facts of the charged offense; the defendant's criminal history, including "a remote gun offense;" and the fact that he "had evaded authorities." In its oral statements, the trial court noted the "disturbing nature" of the charged offense and found that the defendant poses a real and present threat to the safety of C.A. and the community. In rejecting electric monitoring as an alternative to detention, the court stated that, because the defendant would be given "unfettered access to the world for two days by statute," the community would not be adequately protected. In rejecting GPS as an alternative condition of release, the court found that, although it could potentially protect C.A., it would not protect the community.

¶ 24 Based upon the State's proffer, this Court finds that the circuit court did not abuse its discretion in denying the defendant pretrial release where the circuit court's finding that the defendant poses a real and present threat to the safety of C.A. and the community is not against the manifest weight of the evidence and its determination that no condition or combination of conditions can mitigate the real and present posed by the defendant was not an abuse of discretion.

¶ 25 Affirmed.

¶ 26 JUSTICE OCASIO, specially concurring:

¶ 27 I concur in the judgment, but I respectfully disagree regarding the standard of review. I continue to hold the conviction that, except for findings of historical facts, the standard of review should be *de novo*. See *People v. Whitaker,* 2024 IL App (1st) 232009, ¶¶ 79-138 (Ellis, J. concurring); *People v. Lee*, 2024 IL App (1st) 232137, ¶ 21; *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 65 (Ellis, J. specially concurring).