2024 IL App (1st) 240017-U

FOURTH DIVISION
Order filed: March 7, 2024

No. 1-24-0017B,

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 2023 CR 1175191 |
| | ) | |
| | ) | |
| KATHERINE McCANN, | ) | Honorable |
| | ) | Maria Kuriakos Ciesil, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford concurs in the judgment and specially concurs.
Justice Ocasio concurs the judgment.

**ORDER**

¶ 1   *Held*:  We vacated the order of detention and remanded the case to the circuit court with directions to enter an order articulating the facts supporting its finding that the defendant poses a real and present safety threat and to whom and articulating why no restriction(s) other than pretrial detention would mitigate that threat, taking into consideration the factors set forth in 725 ILCS 5/110-6.1 (g) (West Supp. 2023)).

¶ 2    The defendant, Katherine McCann, appeals from the circuit court's order of December 21, 2023, denying her pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). Commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Act 102-1104 , § 70 (eff. Jan. 1, 2023) .  For the reasons which follow, we vacate the detention order of December 21, 2023, and remand the case to the circuit court with directions.

¶ 3    The defendant was arrested on October 20, 2023, and charged 5 counts of First Degree Murder (720 ILCS 5/9-1(a) (West 2022)) and one count of Unlawful Use of a Weapon by a Felon (720 ILCS 5/24-1.1(a) (West 2022)).   On December 21, 2023, the State filed a petition for pretrial detention pursuant to 725 ILCS 5/110-6.1 (West Supp. 2023).   At the detention hearing, the State made the following proffer.

¶ 4    On August 6, 2023, the victim, Mr. Redmond, a former paramour of the defendant, and his cousins left a bar at approximately 1:00 a.m. and drove to a parking area in the rear of the defendant's residence to wait for several women.  At approximately 1:43 a.m., the defendant exited her residence holding a shotgun.  She approached the passenger's side of the vehicle containing the victim and his cousins and pointed the shotgun in their direction.  The victim rolled down the window of the vehicle.  According to his cousins, the defendant was calm when she realized who was in the vehicle.  The victim exited the vehicle and followed the defendant as she walked toward her own vehicle.  The victim's cousins, Murphy and Tye, remained in the vehicle.  One of the cousins observed the defendant pointing the shotgun at the victim's stomach.  Murphy and Tye observed the victim with his back against the defendant's vehicle and with his empty hands in the

_____

[1] The Act has been referred to as the "SAFE-T Act" or the "Pretrial Fairness Act."  Neither name is official, and neither appears in the Illinois Compiled Statures or the public act.

air in a surrendering defensive posture. As Murphy and Tye started to exit the vehicle, they heard a single gunshot and saw a flash of light. When they exited the vehicle, Murphy and Tye saw the victim on the ground and the defendant holding a shotgun. The defendant's son was seen exiting her residence, and one of the victim's cousins saw the defendant hand the shotgun to her son who then walked toward the residence. According to the victim's cousins, the defendant repeatedly stated that she was sorry and that the shooting was an accident. The defendant called 911, gave the dispatcher the address of the incident, and stated that the shooter was not at the scene. Emergency personnel arrived and transported the victim to a hospital where he died. The medical examiner found the cause of death to be a gunshot wound to the abdomen fired from approximately 3 feet. When interviewed by the police at the scene, the defendant stated that she heard a gunshot, exited her home, and found the victim shot and leaning against her car. Ballistics analysis revealed that a shell casing recovered at the scent was fired from a shotgun found in a neighbor's yead located in the direction that the defendant's son traveled carrying the shotgun. The defendant was arrested on October 20, 2023. At the time of her arrest, she was in possession of a phone that had the same number that was used to dial 911 on the date of the shooting. The State also informed the court that the defendant had a 2009 federal conviction for fraud with identification documents for which she was sentenced to 4-years' probation.

¶ 5    In response, the defendant's attorney made the following proffer. On August 6, 2023, the defendant returned home after 1:00 a.m. from her job as a nurse at Silver Cross Hospital. Her two minor children, Carlton age 13 and Cayden age 11, were in the house. As she was preparing for bed, she saw headlights from a car lighting the rear yard of her residence. The vehicle had Florida license plates. The defendant checked her phone to see if she had any messages explaining why a car would be in the rear of her residence and found none. The defendant was scared that someone

was there to rob her, break into her residence, or hurt her children. She took a shotgun belonging to the victim that he had left in her home when he last resided there in 2006, and left her house and walked toward the vehicle parked in the rear of her property. When she approached the vehicle, she raised the shotgun to protect herself. When the defendant saw that her former boyfriend, the victim, was in the car, she lowered the shotgun and began walking toward her own car. The victim yelled at her, stating "get your ass back in the house." The defendant ignored him. She took out her keys and started to open her car when the victim got out of the vehicle he was in with his hands up as if to slap the defendant. The victim attempted to prevent the defendant from entering her car and slapped the keys from her hand. The victim had his back against the defendant's vehicle. The victim again lifted his hands at which time the defendant lifted the shotgun in an attempt to scare the victim. As the victim and the defendant argued, the victim grabbed the shotgun and pulled it toward himself when the gun went off. The victim suffered a single gunshot wound. None of the witnesses, including the victim's cousins, actually witnessed the shooting; they only witnessed what happened before and after the victim was shoot. The defendant gave the shotgun to one of her minor sons who took the gun to a neighbor's property. Following the incident, the defendant called 911, telling the dispatcher that the shooter was not at the scene. The defendant remained at the scene and administered CRP and chest compression to the victim until the paramedics arrived. While at the scene, the defendant said that the shooting was an accident.

¶ 6    In mitigation, defense counsel informed the court of the following. The defendant is a 35-year-old mother of two minor sons. The children's father is incarcerated in Iowa serving an extended sentence and has never been involved in the children's lives. The defendant has both an associate's degree in science and a bachelor's degree in nursing She has been employed since she

graduated from high school. The defendant is a licensed registered nurse, working at Silver Cross Hospital. She suffers from asthma and allergies and had to be taken to the hospital when she was arrested. While incarcerated at the Cook County jail, the defendant was without her inhaler, and she had to file a grievance to obtain one. In addition, she does not have proper allergy medication. The defendant was the victim of domestic abuse by her children's father until their relationship ended in 2013. She also suffered physical abuse, slapping and choking, from the victim until their romantic relationship ended in 2020. In 2023, several months before the shooting, the victim pulled a gun on the defendant. On a later occasion in 2023, the victim threatened to beat one of her sons because he refused to sell marijuana for him. Prior to this incident, the defendant had never shot the gun or taken it out of her house. The defendant has strong ties to the community. She serves as a volunteer at her children's school, is active in her church, and acts as a mentor for young women. The defendant's two minor children, who are currently cared for by the defendant's mother, have suffered serious disruption to their lives and mental issues as a result of the defendant's incarceration. The defendant's only felony conviction was for ID fraud when she was 19. She has no history of violence and has never been arrested or convicted for a crime of violence. The defendant does not have a reputation for violent, abusive, or assaulting behavior. There is no evidence that the defendant suffers from any psychological or psychiatric condition indicative of a violent, abusive, or assaulting nature. There is no evidence that she ever possessed or had access to any weapon other than the shotgun involved in this incident. Since her arrest, the defendant has been threatened by the victim's family.

¶ 7   Following the detention hearing, the circuit court denied the defendant pretrial release. The trial court noted that the defendant exited her house with a shotgun that she should not have

possessed and shot her former paramour at close range. Following the shooting, the defendant gave the shotgun to one of her minor sons who placed the gun in a neighbor's yard, and she called 911, stating that the shooter was not at the scene. In ruling, the court found that the State has shown by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed an eligible offense as listed in 725 ILCS 5/110-6.1(a)(1)-(7) (West Supp. 2023); the defendant poses a real and present threat to the safety of the community based on the specific articulable facts in this case; and that no conditions or combination of conditions of pretrial release can mitigate the real and present threat posed by the defendant to the safety of the community. It also found that there are no less restrictive conditions that would avoid the real and present threat posed by the defendant. The court ordered the defendant detained and remanded her to the custody of the Cook County Sheriff.

¶ 8       On December 21, 2002, the defendant filed a notice of appeal, asserting, as she did at the detention hearing, that:

1. The State failed to meet its burden of proving by clear and convincing evidence that the proof is evident, or the presumption is great that she committed the offenses charged,

2. The State failed to meet its burden of proving by clear and convincing evidence that she poses a real and present threat to the safety of any person or persons or the community, and

3. The State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community.

¶ 9       In considering this appeal, this court has reviewed the following documents which the defendant and the State have submitted pursuant to Illinois Supreme Court Rule 604(h) (eff. Oct.

19, 2023): the defendant's notice of appeal, the supporting record, the report of proceedings, the defendant's supporting memorandum, and the State's response memprandum.

¶ 10　Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West Supp. 2023)). Under that statute, a defendant's pretrial release may only be denied in certain limited situations. 725 ILCS 5/110-2(a), 110-6.1 (West Supp.2023). Upon the filing of a petition requesting an order denying the defendant's pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community and/or that the defendant's pretrial detention is necessary to prevent the defendant's willful flight to avoid prosecution. 725 ILCS 5/110-6.1(e),(f) (West Supp. 2023). It is also the State's burden to prove by clear and convincing evidence that "no condition or combination of conditions of release would reasonably ensure the appearance of the defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." 725 ILCS 5/110-6(a) (West Supp. 2023). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and concludes that the defendant poses a real and present threat to the safety of any person or the community (725 ILCS 5/110-6.1(a)(1)-(7) (West Supp. 2023)) or that there is a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8) (West Supp. 2023)). If the trial court determines that pretrial detention is not appropriate, it may impose conditions "necessary to ensure the defendant's appearance in court, ensure the defendant does not commit any criminal offense, [or] ensure the defendant complies with all conditions of pretrial release." 725 ILCS 5/110-10(b) (West Supp. 2023).

¶ 11     We are mindful of the fact that several judges in the Appellate Court believe that review of a pretrial detention order should be *de novo.* See *People v. Saucedo,* 2024 IL App (1st) 232020, ¶ 65 (Ellis, J., specially concurring). The weight of authority holds that the factual findings of the circuit court are reviewed under a manifest weight standard with the circuit court's determinations that the defendant poses a poses a real and present threat which cannot be mitigated by any condition or conditions of release and its ultimate decision to grant or deny pretrial release are reviewed for an abuse of discretion. See: *People v. Lee,* 2024 IL App (1st) 232137 ¶ 21. In this case, we need not address the issue of the proper standard of review because, whether the standard of review is manifest weight or *de novo,* the record reflects that the State met its burden of proving by clear and convincing evidence that the proof is evident or the presumption is great that the defendant committed a detention eligible offenses as listed in 725 ILCS 5/110-6.1(a) (West Supp. 2023). However. our analysis continues as to the trial court's findings that the State met its burdens of proving by clear and convincing evidence that the defendant poses a real and present threat to the safety of any person or persons or the community and that no condition or combination of conditions other than pretrial detention can mitigate that threat.

¶ 12     In support of its finding that the defendant poses a real and present threat to the safety of the community and that no condition or combination of conditions can mitigate that threat, the trial court articulated only the facts surrounding the shooting of the victim, the fact that the defendant gave the shotgun to one of her minor children, her call to 911, and the defendant's prior conviction for fraud. The trial court's findings do not state why the defendant poses a real and present threat to the community or why no conditions or combination of conditions other than detention could mitigate any such threat. As a consequence, we vacate the December 21, 2023, order of detention

and remand this case to the trial court with directions to enter an order articulating the facts supporting its finding that the defendant poses a real and present safety threat and to whom and articulating why no restriction(s) other than pretrial detention would mitigate that threat, taking into consideration the factors set forth in 725 ILCS 5/110-6.1 (g) (West Supp. 2023)).

¶ 13    Vacated and remanded with directions.

¶ 14    PRESIDING JUSTICE ROCHFORD, specially concurring:

¶ 15    I concur with the decision of the majority to vacate the order of detention and remand this matter to the circuit court, with directions for the circuit court to enter an order articulating the facts supporting its finding that the defendant poses a real and present threat to safety—and to whom—and articulating why no restrictions other than pretrial detention would mitigate that threat.

¶ 16    I write separately to note that this conclusion results from the unique circumstances presented by this case, in which the circuit court properly conducted a thorough detention hearing. At that hearing, the parties were permitted to make full presentations of evidence as to both the circumstances of the alleged offenses and as to the extensive mitigating evidence of defendant's personal and family background and her limited criminal history. We find no fault with the procedure followed here in that regard.

Those unique circumstances aside, however, there may well be any number of other cases in which the State's proffered evidence as to the alleged crime itself, the manner by which it was allegedly committed, and the history and characteristics of the defendant, would alone support a finding that a defendant poses a threat to persons or to the community and that there are no conditions which would mitigate that threat.