2024 IL App (1st) 240892-U

FOURTH DIVISION
Order filed: June 27, 2024

No. 1-24-0892B

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 2023 CR 1175191 |
| | ) | |
| | ) | |
| KATHERINE McCANN, | ) | Honorable |
| | ) | Maria Kuriakos Ciesil, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Justice Ocasio specially concurs in the judgment.
Presiding Justice Rochford dissents in the judgment.

**ORDER**

¶ 1   *Held*:   We reversed the order of the circuit court denying the defendant pretrial release and remanded the case to the circuit court with directions to order the defendant released from detention with appropriate conditions.

¶ 2   The defendant, Katherine McCann, appeals from the circuit court's order of March 13, 2024, denying her pretrial release pursuant to Public Act 101-652, §10-255 (eff. Jan. 1, 2023),

commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023). For the reasons which follow, we reverse the detention order of March 13, 2024, and remand the case to the circuit court with directions to order the defendant's pretrial release with appropriate conditions.

¶ 3    The defendant was arrested on October 20, 2023, and charged with 5 counts of First Degree Murder (720 ILCS 5/9-1(a) (West 2022)) and one count of Unlawful Use of a Weapon by a Felon (720 ILCS 5/24-1.1(a) (West 2022)).  On December 21, 2023, the State filed a petition for pretrial detention pursuant to 725 ILCS 5/110-6.1 (West Supp. 2023). At the detention hearing held on December 21, 2023, the State made the following proffer.

¶ 4    On August 6, 2023, the victim, Mr. Redmond, a former paramour of the defendant, and his cousins left a bar at approximately 1:00 a.m. and drove to a parking area in the rear of the defendant's residence to wait for several women.  At approximately 1:43 a.m., the defendant exited her residence holding a shotgun.  She approached the passenger's side of the vehicle containing the victim and his cousins and pointed the shotgun in their direction. The victim rolled down the window of the vehicle.  According to his cousins, the defendant was calm when she realized who was in the vehicle.  The victim exited the vehicle and followed the defendant as she walked toward her own vehicle.  The victim's cousins, Murphy and Tye, remained in the vehicle. One of the cousins observed the defendant pointing the shotgun at the victim's stomach. Murphy and Tye observed the victim with his back against the defendant's vehicle and with his empty hands in the air in a surrendering defensive posture.  As Murphy and Tye started to exit the vehicle, they heard a single gunshot and saw a flash of light.  When they exited the vehicle, Murphy and Tye saw the

_____

[1] The Act has been referred to as the "SAFE-T Act" or the "Pretrial Fairness Act."  Neither name is official, and neither appears in the Illinois Compiled Statures or the public act.

victim on the ground and the defendant holding a shotgun. The defendant's son was seen exiting the defendant's residence, and one of the victim's cousins saw the defendant hand the shotgun to her son who then walked toward the residence. According to the victim's cousins, the defendant repeatedly stated that she was sorry and that the shooting was an accident. The defendant called 911, gave the dispatcher the address of the incident, and stated that the shooter was not at the scene. Emergency personnel arrived and transported the victim to a hospital where he died. The medical examiner found the cause of death to be a gunshot wound to the abdomen fired from approximately 3 feet. When interviewed by the police at the scene, the defendant stated that she heard a gunshot, exited her home, and found the victim shot and leaning against her car.  Ballistics analysis revealed that a shell casing recovered at the scene was fired from a shotgun found in a neighbor's yard located in the direction that the defendant's son traveled carrying the shotgun. The defendant was arrested on October 20, 2023.  At the time of her arrest, she was in possession of a phone that had the same number that was used to dial 911 on the date of the shooting. The State also informed the court that the defendant had a 2009 federal conviction for fraud with identification documents for which she was sentenced to 4-years' probation. See *People v. McGann (McGann* I*),* 2024 IL App (1st) 240017-U, ¶ 4.

¶ 5     In response, the defendant's attorney made the following proffer. On August 6, 2023, the defendant returned home after 1:00 a.m. from her job as a nurse at Silver Cross Hospital. Her two minor children, Carlton age 13 and Cayden age 11, were in the house. As she was preparing for bed, she saw headlights from a car lighting the rear yard of her residence. The vehicle had Florida license plates.  The defendant checked her phone to see if she had any messages explaining why a car would be in the rear of her residence and found none.  The defendant was scared that someone was there to rob her, break into her residence, or hurt her children. She took a shotgun belonging

to the victim which he had left in her home when he last resided there in 2006, left her house and walked toward the vehicle parked in the rear of her property. When she approached the vehicle, she raised the shotgun to protect herself. When the defendant saw that her former boyfriend, the victim, was in the car, she lowered the shotgun and began walking toward her own car. The victim yelled at her, stating "get your ass back in the house." The defendant ignored him. The defendant took out her keys and started to open her car when the victim got out of the vehicle he was in with his hands up as if to slap her. The victim attempted to prevent the defendant from entering her car and slapped the keys from her hand. The victim had his back against the defendant's vehicle. The victim again lifted his hands at which time the defendant lifted the shotgun in an attempt to scare the victim. As the victim and the defendant argued, the victim grabbed the shotgun and pulled it toward himself when the gun went off. The victim suffered a single gunshot wound. None of the witnesses, including the victim's cousins, witnessed the shooting; they only witnessed what happened before and after the victim was shoot. The defendant gave the shotgun to one of her minor sons who took the gun to a neighbor's property. Following the incident, the defendant called 911, telling the dispatcher that the shooter was not at the scene. The defendant remained at the scene and administered CRP and chest compression to the victim until the paramedics arrived. While at the scene, the defendant said that the shooting was an accident. *Id*, ¶ 5

¶ 6      In mitigation, defense counsel informed the court of the following. The defendant is a 35-year-old mother of two minor sons. The children's father is incarcerated in Iowa serving an extended sentence and has never been involved in the children's lives. The defendant has both an associate degree in science and a bachelor's degree in nursing. She has been employed since she graduated from high school. The defendant is a licensed registered nurse, working at Silver Cross Hospital. She suffers from asthma and allergies and had to be taken to the hospital when she was

arrested. While incarcerated at the Cook County jail, the defendant was without her inhaler, and she had to file a grievance to obtain one. In addition, she does not have proper allergy medication. The defendant was the victim of domestic abuse by her children's father until their relationship ended in 2013. She also suffered physical abuse, slapping and choking, from the victim until their romantic relationship ended in 2020. In 2023, several months before the shooting, the victim pointed a gun at the defendant. On a later occasion in 2023, the victim threatened to beat one of her sons because he refused to sell marijuana for him. Prior to this incident, the defendant had never fired the shotgun or taken it out of her house. The defendant has strong ties to the community. She serves as a volunteer at her children's school, is active in her church, and acts as a mentor for young women. The defendant's two minor children, who are currently cared for by the defendant's mother, have suffered serious disruption to their lives and mental issues as a result of the defendant's incarceration. The defendant's only felony conviction was for ID fraud when she was 19. She has no history of violence and has never been arrested or convicted of a crime of violence. The defendant does not have a reputation for violent, abusive, or assaulting behavior. There is no evidence that the defendant suffers from any psychological or psychiatric condition indicative of a violent, abusive, or assaulting nature. There is no evidence that she ever possessed or had access to any weapon other than the shotgun involved in this incident. Since her arrest, the defendant has been threatened by the victim's family. *Id*, ¶ 6

¶ 7       Following the December 23, 2023, detention hearing, the trial court denied the defendant pretrial release. The trial court recounted the facts of the case as set forth in the State's proffer, noting that the defendant exited her house with a shotgun that she should not have possessed and shot her former paramour at close range. Following the shooting, the defendant gave the shotgun to one of her minor sons who placed the gun in a neighbor's yard, and she called 911, stating that

the shooter was not at the scene. The trial court found that the State has shown by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed an eligible offense as listed in 725 ILCS 5/110-6.1(a)(1)-(7) (West Supp. 2023); the defendant poses a real and present threat to the safety of the community based on the specific articulable facts in this case; and that no conditions or combination of conditions of pretrial release can mitigate the real and present threat posed by the defendant to the safety of the community. It also found that there are no less restrictive conditions that would avoid the real and present threat posed by the defendant. The court ordered the defendant detained and remanded her to the custody of the Cook County Sheriff. See *McGann* I, 2024 IL App (1st) 240017-U, ¶ 7

¶ 8    On December 21, 2023, the defendant filed a notice of appeal, asserting that:

1. The State failed to meet its burden of proving by clear and convincing evidence that the proof is evident, or the presumption is great that she committed the offenses charged,

2. The State failed to meet its burden of proving by clear and convincing evidence that she poses a real and present threat to the safety of any person or persons or the community, and

3. The State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community. *Id*, ¶ 8.

¶ 9    In our March 7, 2024, decision in *McGann* I, this court found that the State met its burden to show by clear and convincing evidence that the proof is evident or the presumption is great that the defendant committed a detention eligible offenses as listed in 725 ILCS 5/110-6.1(a) (West Supp. 2023). See *Id.*, ¶ 11. However, we also found that, "[i]n support of its finding that the defendant poses a real and present threat to the safety of the community and that no condition or combination of conditions can mitigate that threat, the trial court articulated only the facts

surrounding the shooting of the victim, the fact that the defendant gave the shotgun to one of her minor children, her call to 911, and the defendant's prior conviction for fraud." *Id,* ¶ 12. We concluded that the trial court's findings failed to "state why the defendant poses a real and present threat to the community or why no conditions or combination of conditions other than detention could mitigate any such threat." *Id.* As a consequence, we vacated the December 21, 2023, order of detention and remanded the case to the trial court with directions to enter an order articulating the facts supporting its finding that the defendant poses a real and present safety threat, and to whom, and articulating why no restriction(s) other than pretrial detention would mitigate that threat, taking into consideration the factors set forth in 725 ILCS 5/110-6.1 (g) (West Supp. 2023)). *Id.*

¶ 10    On remand and pursuant to our order in *McGann* I, the trial court conducted a hearing on March 23, 2024.  At the beginning of that hearing, the defendant and the State requested that the trial court take notice of the arguments and exhibits from the defendant's December 21, 2023, detention hearing. A transcript of those proceedings was presented to, and received by, the trial court. After which, the trial court summarized its recollection of the factual proffers made at the December 21, 2023, hearing. During that summary, the parties essentially agreed to the facts as recited by the trial court.  Pursuant to the trial court's inquiry, defense counsel represented that no soot, unburned gunpowder particles, gunpowder stippling, or satellite defects were seen on the skin of the victim.  The trial court concluded that the victim was shot from a distance greater than 3 feet.  The parties also addressed the involvement of the defendant's 13-year-old son following the shooting.  Defense counsel stated that he disagrees with the State's position that the defendant gave the shotgun to her son. He stated that a video which he had seen after the December 21, 2023, hearing showed the witness, Murphy, who stated that the defendant gave the shotgun to her son,

wandering back and forth in an alley. Defense counsel also represented that Murphy's statement that the defendant's son went through a gangway and threw the shotgun over a fence and into a neighbor's yard was inconsistent with where the gun was found in relation to the gangway. He also represented that the defendant's son went to the front door of the neighbor in whose yard the gun was found, rang the doorbell, stated that someone had been shot, and asked for help. Relying on Murphy' statements, the State disagreed with defense counsel's representations.

¶ 11    The trial court inquired as to whether either side wished to make any other statements before it articulated it reasoning. In response, the State observed that our decision in *McGann* I "didn't say that we can add anything additional into the original hearing." The trial court responded that it would allow defense counsel to make any statemen that he wished to make. In mitigation, defense counsel represented that, while incarcerated, the defendant had participated in inmate programs and therapeutic services. Defense counsel also advised the court of the effects that the defendant's incarceration was having on her two sons and that their grandmother did not know how much longer she could care for the boys. According to defense counsel, the defendant had developed a leg infection and had not been able to see a dermatologist.

¶ 12    Based on his interpretation of this court's order in *McGann* I, defense counsel argued that the underlying facts of this case are insufficient to support a finding that the defendant poses a real and present threat to the safety of any person or the community or that no condition or combination of conditions can mitigate that threat. Enumerating factors for consideration set forth in 725 ILCS 5/110-6.1 (g) (West 2022)), defense counsel asserted that the State had not produced any evidence that: the defendant has a history indicative of violent, abusive or assaultive behavior; the defendant's psychological, psychiatric or similar social history is indicative of violent, abusive or assaultive behavior; or the defendant has a reputation for violent behavior.  Defense counsel argued

that the State had not proven that the defendant poses a threat to the safety of anyone in the community or that there are no conditions of release that could mitigate any such threat. In response, the State recited the facts in its proffer and argued, based on those facts, that the defendant poses "a threat to everyone," which includes "everyone here, her family, people she knows as well as people she doesn't know."

¶ 13    Thereafter, the trial court made a very specific oral recitation of the facts before finding that, based on the State's proffer, the defendant poses a danger to herself and others. According to the trial court:

> "there is no lesser conditions that can mitigate because of the fact that she is a convicted felon who is armed with that gun coming out of the home to confront a car full of strangers when she could have called the police, all of that, I'm taking all of that into consideration and saying she is a danger based on what she created based on her actions that evening and I feel that by putting her on electronic monitoring and sending her back home to those minor children who were living in that home with her with that shotgun in that home all that time is a danger that she posed."

¶ 14    Following the trial court's oral factual recitation and reasoning, it entered orders on March 13, 2024, again finding that the State had shown by clear and convincing evidence that: the proof is evident or the presumption is great that the defendant has committed an eligible offense listed in 725 ILCS 5/110-6.1(a)-(7) (West 2022); the defendant poses a real and present threat to the safety of the community; and that no conditions or combination of conditions of pretrial release can mitigate the real and present threat posed by the defendant to the safety of the community. The trial court also entered a detailed draft order containing a recitation of the facts of the case.

The trial court again ordered the defendant detained and remanded her to the custody of the Cook County Sheriff pending trial.

¶ 15    On March 15, 2024, the defendant filed a notice of appeal, asserting both that:

1. The State failed to meet its burden of proving by clear and convincing evidence that she poses a real and present threat to the safety of any person or persons or the community, and

2. The State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community posed by her.

¶ 16    In considering this appeal, we have reviewed the following documents:

- The defendant's Notice of Appeal in *McGann*

- The Supporting Record in *McGann*

- The Report of Proceedings on December 21, 2023, filed in *McGann*

- The defendant's supporting memorandum filed in *McGann*

- The State's response memorandum filed in *McGann*

- The defendant's Notice of Appeal filed in the instant appeal on March 15, 2024

- The Supporting Record in the instant appeal

- The Report of Proceedings on March 13, 2024, filed on May 5, 2024

- The defendant's supporting memorandum filed May 28, 2024

- The State's response memorandum filed on June 18, 2024

¶ 17    In this appeal, the defendant has not contested the trial court's finding that the State had shown by clear and convincing evidence that the proof is evident or the presumption is great that she has committed a detainable offense as charged.  Consequently, our review addresses only the

defendant's arguments that the State failed to show by clear and convincing evidence both that she poses a real and present threat to the safety of any person or the community and that no conditions or combination of conditions of pretrial release can mitigate the real and present threat posed by her.

¶ 18    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)). Under that statute, a defendant's pretrial release may only be denied in certain limited situations. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022).  Upon the filing of a petition requesting an order denying the defendant's pretrial release, the State has the burden to show by clear and convincing evidence that: the proof is evident or the presumption great that the defendant has committed a qualifying offense: that the defendant's pretrial release poses a real and present threat to the safety of any person or the community and/or that the defendant's pretrial detention is necessary to prevent the defendant's willful flight to avoid prosecution: and no condition or combination of conditions of release would mitigate the real and present threat that the defendant poses or reasonably ensure the appearance of the defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor.  725 ILCS 5/110-6.1 (e)(1), (2), (3) (West Supp. 2022). The trial court may order a defendant detained pending trial if it finds that the State has met all three of its burdens.

¶ 19    We are mindful of the fact that several judges in the Appellate Court believe that review of a pretrial detention order should be *de novo.*  See: *People v. Lee,* 2024 IL App (1st) 232137 ¶ 21; *People v. Saucedo,* 2024 IL App (1st) 232020, ¶ 65 (Ellis, J., specially concurring).  We disagree. As was noted by the majority in *Saucedo*, the decision to grant or deny pretrial release involves proof, or the absence thereof, of three propositions.  The first two propositions, whether the proof is evident and the presumption is great that the defendant committed a detainable offenses as

charged and that the defendant poses a real and present threat to the safety of any person or persons or the community, are questions of fact. *Saucedo,* 2024 IL App (1st) 232020, ¶¶ 31, 32. The manifest weight standard applies to the review of factual determinations made by the trial judge. *People v. Finlaw,* 2023 IL App (4th) 220797, ¶55. We believe the third proposition, that no condition or combination of conditions can mitigate the real and present threat posed by the defendant, is a matter committed to the discretion of the trial judge based on a weighing of several factors to arrive at a decision that promotes principals of fundamental fairness and effective judicial administration. *Saucedo,* 2024 IL App (1st) 232020, ¶36; *People v. Reed,* 2023 IL App (1st) 231834, ¶31.

¶ 20 The abuse of discretion standard of review was applied to circuit court decisions relating to the setting of bond. *People v. Simmons,* 2019 IL App (1st) 191253, ¶ 9; *People v. Johnson,* 2019 IL App (3d) 190582, ¶ 8. We find no reason why the same standard of review should not apply to the circuit court's ultimate decision to either grant or deny pretrial release.

¶ 21 In support of its finding that the State met its burdens of showing that the defendant poses a real and present threat to the safety of any person or the community, and that no condition or combination of conditions of release would mitigate the threat posed by the defendant, the trial court has again, although in greater detail, merely recited the facts of the case as set forth in the State's proffer, the fact that the defendant gave the shotgun to one of her minor children, the text of her call to 911, and the defendant's prior felony conviction for fraud. In an appropriate case, the State's proffered evidence as to the alleged crime itself, the manner by which it was allegedly committed, and the history and characteristics of the defendant, may very well be sufficient to support findings that the defendant poses a threat to the safety of a person(s) or to the community

and that there are no conditions which would mitigate that threat. We do not believe that this is such a case.

¶ 22    The defense proffer in this case reveals that the defendant is a 35-year-old single mother of two young sons. She has been employed since she graduated from high school and holds a nursing degree. At the time of the occurrence in this case, the defendant was employed as a nurse at Silver Cross Hospital. She has served as a volunteer at her children's school, is active in her church, and has mentored young women. It was represented that, prior to the incident giving rise to her arrest, the defendant had never fired a gun or had access to a firearm other than the shotgun used in this incident which was the property of the victim; there was no contrary evidence. There was no evidence introduced that the defendant had a history of violence or had ever been arrested for a crime of violence. There is no evidence that the defendant has a reputation for violent behavior or that she suffers from any psychological or psychiatric condition indicative of violent behavior. Prior to the incident giving rise to this case, the defendant's only conviction was for felony ID fraud, a nonviolent offense, committed when she was 19 years old. These facts lead us to conclude that the trial court's finding that the State met its burden of showing that the defendant poses a real and present threat to the safety of any person or the community is against the manifest weight of the evidence. Factual findings are against the manifest weight of the evidence when, as in this case, an opposite conclusion is clearly apparent. See *Lawlor v. North American Corp. of Illinois,* 2015 IL 112530, ¶ 70.

¶ 23    Having found that the trial court's finding that the State met its burden of showing that the defendant poses a real and present threat to the safety of any person or the community is against the manifest weight of the evidence, it follows that we also find that the trial court abused its

discretion in finding that no condition or combination of conditions can mitigate the real and present threat posed by the defendant.

¶ 24    Based on the foregoing analysis, we reverse the trial court's order denying the defendant pretrial release and ordering her pretrial detention, and we remand the case to the trial court with directions to order the defendant's pretrial release subject to appropriate conditions.

¶ 25    Reversed and remanded with directions.

¶ 26    JUSTICE OCASIO, specially concurring:

¶ 27    Because the trial court's dangerousness determination was not based on findings of historical fact entered after hearing live testimony, I would review it *de novo*. See *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 137 (Ellis, J., concurring). With that said, I fully agree that the trial court's finding that Katherine McCann poses a real and present threat to the safety of any person, persons, or the community was against the manifest weight of the evidence.

¶ 28    JUSTICE ROCHFORD, dissenting:

¶ 29    I respectfully dissent. I would hold that the trial court's finding that the State met its burden of showing that the defendant poses a real and present threat to the safety of any person or the community was not against the manifest weight of the evidence. Also, I would hold that the trial court committed no abuse of discretion in finding that no condition or combination of conditions of release would mitigate the threat posed by the defendant, and in denying the defendant pretrial release and ordering her pretrial detention.